### 23285. UNDERCOFLER et al. v. EASTERN AIR LINES, INC.

ARGUED DECEMBER 15, 1965—DECIDED FEBRUARY 2, 1966—REHEARING DENIED FEBRUARY 23 AND MARCH 10, 1966.

*Arthur K. Bolton, Attorney General, Louis F. McDonald, Assistant Attorney General, H. Perry Michael,* for appellants.

*Gambrell, Harlan, Russell & Moye, E. Smythe Gambrell, Theodore M. Forbes, Jr.,* for appellee.

GRICE, Justice. An air carrier's petition, seeking relief against sales and use taxes on certain personal property, is for appraisal here.

The carrier contends that it is not subject to the Georgia Retailers' and Consumers' Sales and Use Tax Act (Ga. L. 1951, p. 360, as amended) for fuel and parts purchased and brought into Georgia for use, and actually used, exclusively in interstate commerce, and for food purchased in Georgia and served to passengers outside Georgia on interstate flights.

Litigation over this issue began when the carrier, Eastern Air Lines, Inc., filed in the Superior Court of Fulton County its petition which, as amended, named as defendants "Hiram K. Undercofler, who is State Revenue Commissioner of the State of Georgia and E. J. Olmstead, who is Director of the Sales and Use Tax Unit of" that department. It sought injunctive and declaratory relief against assessments for such taxes for a designated period. Two temporary orders were entered, restraining the defendants as prayed. The defendants interposed general and special demurrers to the petition.

Enumerated as errors are the overruling of the defendants' general demurrers, the denial of their motion to dissolve the first restraining order, and the granting of the second restraining order.

The allegations of the amended petition, insofar as material to this appeal, are those which follow.

The plaintiff's carrier operations are almost entirely in interstate commerce, and the great bulk of those in Georgia are wholly interstate. Those interstate flights which touch Georgia land at and take off only from the Atlanta Municipal Airport.

Plaintiff maintains in Georgia, in addition to terminal facilities, those for servicing, repair and maintenance of its aircraft used exclusively in interstate operations. In connection with these facilities plaintiff maintains flight equipment, including replacement parts and components (all hereinafter referred to as "parts") which are installed in such aircraft. It purchases these parts outside of Georgia and brings them into Georgia in interstate commerce. They are used exclusively for aircraft operated only in interstate commerce and do not come to rest in Georgia or become a part of the mass of plaintiff's property in this State. Plaintiff's records show separately the parts installed in aircraft used exclusively in interstate commerce and in those used to a small degree in intrastate commerce.

Plaintiff also purchases all fuel for its aircraft outside of Georgia and brings it into this State in interstate commerce. The fuel which is purchased for aircraft operating exclusively in interstate commerce is used for that purpose, and is so shown on its records. That which is bought for use in both interstate and intrastate commerce is so used and recorded. None of the fuel comes to rest in Georgia so as to become a part of the mass of plaintiff's property in Georgia.

Plaintiff also purchases prepared meals in Georgia for serving on interstate flights only. It buys these meals and boards them on the aircraft just prior to departure, and serves them only after the Georgia line is passed. It makes no separate charge to its passengers for these meals but includes the price in the cost of the ticket. These meals, from purchase until consumption, are in continuous movement in interstate commerce and never become a part of the mass of plaintiff's property in Georgia.

Plaintiff has paid all taxes owed by it pursuant to such Sales and Use Tax Act.

Nevertheless, the defendants have threatened to assess additional taxes for the period from February 1, 1959, through June 30, 1963, for specified amounts of principal, interest, and penalty. In addition defendants have threatened and, unless protected by this court, will audit for numerous periods after June 30, 1963, through February 18, 1965, for the purpose of further assessments.

The additional taxes threatened apparently derive from an official opinion issued on January 27, 1959, by the then Attorney General of this State, declaring no longer valid his earlier official opinion of July 2, 1951, to the contrary. Concluding excerpts of both opinions are set forth.

The defendants are attempting to apply such later 1959 ruling to plaintiff by requiring it to pay a tax on all fuel and parts brought into Georgia in aircraft operated exclusively in interstate commerce, and also on all food purchased by plaintiff in Georgia for service to its passengers on aircraft operated exclusively in interstate commerce. Under the earlier 1951 opinion the plaintiff was required to pay a tax upon such items

only in proportion to their use in intrastate commerce, and no contention was made by the defendants' predecessors that those items bought for use exclusively in interstate commerce were taxable.

As interpreted by the later 1959 opinion and construed, applied and enforced by the defendants, the Act imposes a burden on interstate commerce, in violation of Article I, Section 8, Paragraph 3 of the United States Constitution since it requires plaintiff to pay a tax upon commodities bought by it for use, and used, exclusively in interstate commerce. Such Act, as applied to the plaintiff by the defendants, also violates Article XII, Section I, Paragraph I of the Georgia Constitution.

The defendants have misconstrued and misapplied the Act in attempting to assess such additional taxes against plaintiff, because by Section 4, the Act excludes and exempts the items in controversy here.

Plaintiff's acts, above described, constitute bona fide interstate commerce, and defendants' efforts to tax such purchases and uses violate Section 4 of said Act; but if the defendants' interpretation of the Act is correct, then it, as so interpreted and applied to plaintiff, violates the Constitutions of the United States and of Georgia, as aforesaid.

Plaintiff's purchases of the meals are exempt from the Act as the sales to plaintiff from its suppliers are for resale, and plaintiff's sales of them to its passengers are not subject to the tax because they occur beyond this State.

Plaintiff has paid all sales and use taxes owed by it under the Act as construed by the 1951 opinion of the Attorney General, but has not paid any sought to be assessed under the 1959 opinion because it does not owe them.

Plaintiff's legal remedy is uncertain and inadequate. Section 19 of the Sales and Use Tax Act provides that upon claim of illegal assessment, "the taxpayer shall have his remedy under the Code of Georgia, Section 92-8445, et seq." However, although such a section existed in the unofficial annotated Code, it has never been a part of the official Code of Georgia, and therefore plaintiff cannot be certain that it has any legal remedy.

Furthermore, even if such remedy exists, it is inadequate.

That section of the annotated Code provides for appeal of assessments to the superior court. But defendants have threatened to audit plaintiff's records from about June 30, 1963, through February 18, 1965, and as each month is a tax period, plaintiff will be confronted with a series of assessments. Each new assessment and appeal would constitute a new and separate proceeding at law, resulting in a multiplicity of suits. Also, in making such assessments, the defendants may either assess an arbitrary figure and impose upon plaintiff the burden of correctness, or they may audit plaintiff's records for the months involved and make an assessment on that basis. Either procedure would subject plaintiff to substantial expense and inconvenience, with doubtful legal basis for recovery therefor. The latter procedure would require plaintiff either to bring its records from New York City and Miami to defendants' offices or to pay the expenses of defendants' agents to and from such cities and while there so engaged.

Plaintiff has a further claim to equitable relief for the reason that it acted for some eight years in reliance upon the said 1951 opinion in planning its operations so as to make Atlanta, rather than some city in another state, a key part of its operations. Furthermore, between the 1951 and 1959 opinions, the General Assembly of Georgia met in eight sessions but took no action which detracted from the original 1951 opinion, although it amended the Act 17 times in other respects.

An actual controversy exists between the plaintiff and defendants as to the proper construction and application of said Sales and Use Tax Act as it affects plaintiff, and hence plaintiff is entitled to a declaratory judgment as to its liability for additional taxes, if any.

The prayers, insofar as essential here, were:

That the defendants be temporarily restrained and permanently enjoined from assessing plaintiff for any sales and use taxes for any period prior to February 19, 1965, on account of the transactions relating to the property hereinbefore described; and that the court determine and declare that under said Act and the Constitutions of the United States and of Georgia, plaintiff is not subject to tax as to fuel brought into Georgia for use,

and actually used, to propel aircraft operated exclusively in interstate commerce, that it is not subject to said tax as to parts brought into Georgia in interstate commerce for use, and actually used, in the maintenance, repair, service, and operation of aircraft used exlusively in interstate commerce, and that it is not subject to such tax as to food purchased in Georgia, boarded on aircraft for resale and service to passengers beyond the borders of this State on exclusively interstate flights.

■ We deal first with the defendants' contention, raised in support of their demurrers, that this is a suit against the State without its consent and for that reason alone cannot be maintained.

This contention is not meritorious.

It is significant here that the petition as amended charges that the defendants are attempting to assess taxes against the plaintiff contrary to and in violation of a specified statute of this State.

Therefore, this suit comes within the well established rule that "A suit may be maintained against officers or agents personally, because, while claiming to act officially, they have committed or they threaten to commit wrong or injury to the person or property of plaintiff, either without right and authority or contrary to the statute under which they purport to act. Although a defendant may assert that he acted officially and on behalf of the State, a suit of this class is not a suit against the State . . ." *Cannon v. Montgomery,* 184 Ga. 588, 591 (192 SE 206). See also *Dennison Mfg. Co. v. Wright,* 156 Ga. 789, 793-794 (120 SE 120); *Patten v. Miller,* 190 Ga. 105, 122 (8 SE2d 776); *Moore v. Robinson,* 206 Ga. 27, 37 (55 SE2d 711).

■ We come now to the substantial issue, whether the plaintiff is liable for the taxes sought to be imposed.

(a) As to the fuel and parts, this hinges upon the proper construction of a provision of Section 4 of the Georgia Retailers' and Consumers' Sales and Use Tax Act (Ga. L. 1951, p. 360, as amended; *Code Ann. Ch.* 92-34A), as it existed prior to February 19, 1965. That provision recited as follows:

"It is not the intention of this Act to levy a tax upon articles of tangible personal property imported into this State

or produced or manufactured in this State for export, the repairing or storage of such property in the State for use in another State, nor is it the intention of this Act to levy a tax on bona fide interstate commerce. It is, however, the intention of this Act to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this State of tangible personal property after it has come to rest in this State and has become a part of the mass of property in this State." Ga. L. 1951, pp. 360, 370 (*Code Ann.* § 92-3406a).

The defendants contend that this is an interpretative provision by which the General Assembly merely declared its intention to exhaust its full power to tax, short of violating the commerce clause of the United States Constitution, and that it did not relieve the plaintiff of the taxes in issue here.

We cannot agree with this contention.

It is true that under the decisional law at the time the Sales and Use Tax Act, supra, was enacted, a State could constitutionally impose a tax upon the storage and withdrawal of gasoline even though, subsequent to the incidence of the tax, it was used as an instrument of interstate commerce. *Thompson v. Eastern Air Lines, Inc.*, 200 Ga. 216 (36 SE2d 675); Nashville, C. & St. L. R. Co. v. Wallace, 288 U. S. 249 (53 SC 345, 77 LE 730); Edelman v. Boeing Air Transport, Inc., 289 U.S. 249 (53 SC 591, 77 LE 1155)).

But, as we construe the above quoted provision of Section 4, the General Assembly elected *not* to exhaust its full power to tax.

By Section 4 it qualified the language of Section 2 of the Act (*Code Ann.* § 92-3402a), which levies the tax, and also that of Section 3 (*Code Ann.* § 92-3403a), which defines its terms, so that by the Act taken as a whole, "it is not the intention of this Act to levy a tax upon . . . the repairing or storage of such property [imported] in the State for use in another State, nor is it the intention of this Act to levy a tax on bona fide interstate commerce." Then, "It is, however, the intention of this Act to levy a tax on . . . the storage *to be used or consumed in this State* of tangible personal property after it has come to rest in this State and has become a part of the mass of property in this State." (Emphasis ours.)

Although this language of Section 4 is not entirely without ambiguity, we construe it to exclude from the tax imposed the plaintiff's fuel and parts brought into Georgia for use, and actually used, in interstate commerce.

It states that there is no intention to tax property brought into this State and stored or repaired for use in another State nor to levy a tax on bona fide interstate commerce, but that it does intend to levy a tax on property stored in this State to be used or consumed in this State, after it has become a part of the mass of property in this State.

The fuel and parts in question here are property imported into this State for use in another State as they are directly used in interstate commerce. They are, in fact indispensable to plaintiff's interstate commerce. Without fuel and parts it cannot carry on that commerce.

Such fuel and parts do not come within the situation which the latter sentence of Section 4 states that the Act does intend to tax. Although they may be stored at times, they are not stored "to be used or consumed in this State," and thus we are not concerned with whether they have come to rest or become a part of the mass of property in this State. The coming to rest or becoming a part of the mass of property in this State is relevant only where the property is to be used or consumed in this State.

Our conclusion that the fuel and parts involved here are excluded from the tax imposed by this Act is strengtherend by well established rules of statutory construction.

Since Section 4 is of doubtful meaning, it must be construed most strongly in favor of the taxpayer. *Savannah v. Hartridge,* 8 Ga. 23 (6); *Thompson v. Eastern Air Lines, Inc.,* 200 Ga. 216, 224, supra.

Also of significance is the contemporaneous administrative construction given the Act, and the legislative acquiescence in that construction for a long period of time. Less than five months after its enactment the then Attorney General construed this original provision of Section 4 so as not to apply to transactions such as those involved here. The Revenue Commissioner at that time, and all subsequent ones, followed and

applied that construction until the 1959 Attorney General opinion to the contrary. During that eight-year interim the General Assembly did not see fit to change this provision of Section 4, although it met in eight sessions and 17 times amended the Act in other respects.

The weight of such administrative construction and legislative acquiescence was stated, in connection with a comparable situation, in *Thompson v. Eastern Air Lines, Inc.*, 200 Ga. 216, 224-225, supra: "In addition to the foregoing reasons why we hold that the tax here claimed is not imposed by the law, there have been more than six years of administrative interpretation, obviously approved by the legislature, holding that such tax was not imposed. Shortly after this law was approved in 1937, the Attorney General ruled that it did not impose the tax upon storage and withdrawal. The Comptroller General, who was at that time the State official charged with the duty of collecting the tax, ruled that the law did not impose the tax upon storage and withdrawal. Successive State Revenue Commissioners, who succeeded the Comptroller General as the State official charged with the duty of collecting such taxes, followed the previous rulings that such a tax was not imposed. During this time the General Assembly convened a number of times and amended the law in other respects without ever amending it to impose the tax upon storage and withdrawal. And finally, by an amendment approved on  .  .  .  the legislature expressly provided that no tax should be imposed upon storage and withdrawal. In the interpretation of doubtful statutes, much weight will be given such administrative and legislative interpretations." See also *Ezekiel v. Dixon*, 3 Ga. 146, 153; *Epping v. City of Columbus*, 117 Ga. 263, 273-274 (43 SE 803); *State v. Camp*, 189 Ga. 209 (1) (6 SE2d 299).

In view of the above authorities and statutes of this State, we deem it unnecessary to make reference to out-of-State sales and use tax statutes and the decisions relating to them.

Therefore, construing and applying this Act to the articles of property sought to be taxed here, we hold that it does not impose a tax upon the fuel and parts brought into this State for use, and actually used, exclusively in interstate commerce. Such use is, of course, subject to proof by the plaintiff.

(b) As to the meals purchased by the plaintiff and served to its passengers, we reach a different conclusion.

Section 4 of the Sales and Use Tax Act, supra, has no application to the food transactions. The meals are not, as contended by the plaintiff, an export within the meaning of that section, nor do they fall within the other provisions of that section. Since Section 4, with its doubtful language, is not applicable here, we need not seek the aid of the rules of construction invoked in Division 2(a), supra. Furthermore, the Attorney General opinions, also referred to in that division, made no ruling as to the taxability of such food transactions.

We must consider the allegations of the petition in the light of the provisions of the Act relating to sales made in Georgia.

The petition alleges that plaintiff serves meals to passengers on its interstate flights, that such meals are purchased by plaintiff in Georgia ready to eat and put into the galleys of its aircraft just prior to departure, and that the meals are not served until the Georgia State line is passed. It alleges that no separate charge is made for the meals, but that the price of them is included in the cost of the tickets.

Plaintiff contends that its purchase of the meals from the supplier is not taxable because such purchase is for resale, and that its sale to its passengers is exempt because such sale occurs beyond the jurisdiction of this State.

We agree that plaintiff's purchase of meals from the supplier is not a taxable event. The Act does not impose a tax on the purchase of property for resale, except under limited conditions not applicable here. See *Code Ann.* §§ 92-3402a, 92-3403a(d).

However, we conclude that plaintiff's sale of the meals to its passengers is a taxable event. As we view what is alleged, such sale occurs when the ticket, the cost of which includes the price of the meal, is purchased. Therefore, when the ticket is purchased in this State, the sale occurs in this State, regardless of where the aircraft is when the meal is served.

The fact that actual delivery of the meal does not occur until later does not prevent perfection of its sale at the time of purchase of the ticket. The passenger impliedly consents for delivery to be made during the flight. Under these circum-

stances, the sale is complete when the ticket is bought. See *Code* § 96-107; Ga. L. 1962, pp. 156, 183 and 204 (*Code Ann.* §§ 109A-2—301, 109A-2—503).

The fact that the price of the meal is included in the cost of the ticket does not prohibit a tax on the meal. We must conclude from the allegations that "the price of the meal" is a known amount and hence separable from the charge made for transportation.

The Act provides that "Retail Sale" or "Sale at retail" means "A sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property. . ." (*Code Ann.* § 92-3403a), and ". . . Every person making a sale or sales of tangible personal property at retail in this State shall be a retailer and a dealer . . . and shall be liable for a tax thereon at the rate of three percent of such gross sale or gross sales, or the amount of taxes collected by him from his purchaser or purchasers . . . whichever is greater . . ." *Code Ann.* § 92-3402a.

Therefore, the plaintiff is liable for tax on the meals sold to its passengers.

■ The plaintiff urges that if the Act is construed and applied so as to subject it to liability for tax on the fuel, parts and food involved here, it is violative of the Commerce Clause of the United States Constitution (Art. I, Sec. 8, Par. 3), and of Article XII, Section I, Paragraph I (*Code Ann.* § 2-8003) of the Georgia Constitution.

This attack is without merit.

The taxation of plaintiff's sale of food places no burden on interstate commerce such as would offend such Constitutional provisions. It is merely a tax due to a local transaction, the sale of the meal. See *Oxford v. Blankenship,* 106 Ga. App. 546 (127 SE2d 706); Eastern Air Transport v. Tax Commissioner, 285 U.S. 147, 152 (52 SC 340, 76 LE 673; 15 Am.Jur.2d 668, Commerce, § 32.

■ In view of the ruling made in Division 2(a), the petition alleges a cause of action for injunctive relief to protect the plaintiff from the unauthorized action of the defendants in assessing taxes on fuel and parts brought into the State for use,

and actually used, exclusively in interstate commerce. See *Cannon v. Montgomery,* 184 Ga. 588, 591-592, supra; *Moore v. Robinson,* 206 Ga. 27, 37, supra.

■ No basis is alleged for declaratory judgment as to taxability of the property at issue here. The plaintiff alleges that it needs a determination of the controversy as to taxability so as to relieve it from uncertainty and injury resulting from the expense and inconvenience attendant to the auditing of its books in order to make assessments on the property in controversy. However, a declaration as to taxability would not relieve the plaintiff from audits of its books, since the Sales and Use Tax Act, supra, specifically provides for examination of such records by the defendants. *Code Ann.* §§ 92-3428a, 92-3430a, 92-3431a, 92-3432a.

■ As to the order denying the defendants' motion to dissolve the initial restraining order and the granting of the second such order, the rulings made in Divisions 2(a) and 4 control adversely to the defendants insofar as the fuel and parts are concerned.

However, insofar as the orders restrain the assessment of taxes on the food, they are erroneous under the ruling made in Division 2(b).

*Judgments affirmed, with direction that the restraint against the defendants' assessment of taxes on the food be deleted from the restraining orders. All the Justices concur, except Almand and Cook, JJ., who are disqualified.*