45109, 45122. HAWES, Commissioner v. NATIONAL SERVICE INDUSTRIES, INC.; and vice versa.

ARGUED FEBRUARY 3, 1970—DECIDED APRIL 30, 1970—
REHEARING DENIED MAY 21, 1970—

*Arthur K. Bolton*, Attorney General, *Harold N. Hill, Jr.*, Executive Assistant Attorney General, *William L. Harper, H. Perry Michael*, Assistant Attorneys General, *Timothy J. Sweeney*, Deputy Assistant Attorney General, for appellant.

*Haas, Holland, Freeman, Levison & Gibert, Robert H. Walling*, for appellee.

JORDAN, Presiding Judge. ■ The Commissioner relies on the original language of the Sales and Use Tax Act in respect to transactions before the approval of the amendment on February 19, 1965. This avoids any issue of conflict between the amendment and the provisions of Art. I, Sec. III, Par. II, of the State Constitution (*Code Ann.* § 2-302), prohibiting the passage of a retroactive law, or *Code* § 102-104, prohibiting retrospective operation of law except in specified instances.

■ The declared intent of § 4 of the Act in effect before February 19, 1965, is not "to levy a tax upon articles of tangible personal property imported into this State or produced or manufactured in this State for export, the repairing or storage of such property in the State for use in another State, nor . . . on bona fide interstate commerce" but to levy a tax on retail sales and "the use, the consumption, the distribution, and the storage to be used or consumed in this State of tangible personal property after it has come to rest in this State and has become a part of the mass of property in this State." The lower court, in applying § 4 to truck chassis purchased outside Georgia and then stored in Georgia to be used in making completed trucks to be used outside Georgia, relied on the ruling in *Undercofler v. Eastern Air Lines*, 221 Ga. 824 (147 SE2d 436), and concluded that no taxable transactions occurred because the storage in Georgia was for use in another State within the mean of § 4.

Even if we concede that the ruling in the *Eastern Air Lines* case (Division 2 (a)) stands for the proposition that the transactions, aircraft fuel and parts stored in Georgia, related to uses exclusively in interstate commerce, and even if we reject the contention of the taxpayer that the assessment here is one on

bona fide interstate commerce, we must still construe § 4 most strongly in favor of the taxpayer in view of its doubtful meaning, as was recognized in the *Eastern Air Lines* case, supra. Storage alone, of property brought into the State to be used in another State, is obviously excluded, and if a taxable event occurred in Georgia, it is by reason of the fabrication process, but the chassis themselves were not fabricated in Georgia, but merely attached to bodies fabricated in Georgia.

While the ruling in *Macon Machine Shop, Inc. v. Hawes,* 118 Ga. App. 280, 283 (163 SE2d 440) supports "withdrawal of raw materials from inventory in Georgia and their fabrication by the contractor into structural entities which it subsequently installed in Tennessee" as a taxable event to impose a tax on the value of the raw materials, that case is distinguishable because it involved raw materials purchased in Georgia, and required no application of the "in and out" exclusion of § 4.

In summary, considering the "in and out" exclusion together with the inclusions with respect to use and consumption of property after it has come to rest in Georgia, and resolving any doubt in favor of the taxpayer, we conclude that the General Assembly, by the declaration of intent prior to February 19, 1965, did not intend to impose a use tax on the value of property moving "in and out" of Georgia which merely had other property attached to it while it was in Georgia, and which was at all times intended for use in another State, without reaching a determination of whether the assessment is an attempt to levy a tax on bona fide interstate commerce.

In view of the above, the trial court properly concluded that the taxes and interest were illegally assessed in respect to the truck chassis moved "in and out" of Georgia before February 19, 1965. This disposes of the main appeal.

■ The taxpayer contends under the cross appeal, however, that all other transactions before February 19, 1965, are exempt under § 4, supra. It is argued that § 4 discloses an intent of the General Assembly not to exhaust its full power to tax, and excludes property stored in Georgia which was put to ultimate use in another State even though it was not specifically intended for such use when brought into Georgia or stored in Georgia.

Excluding the truck chassis from further consideration for the reasons already stated, the stipulated transactions include: A. Towel cabinets shipped to a seller in Georgia, stored by the seller in Georgia, then delivered to the taxpayer in Georgia for acceptance and storage, and shipped out of Georgia by the taxpayer for ultimate use elsewhere. B. Items purchased from sellers in Georgia and stored by the taxpayer in Georgia until shipped as the need arose to other States for ultimate use. C. Items shipped from sellers outside of Georgia, f.o.b. seller's place of business, to the taxpayer in Georgia and stored in Georgia for an indefinite period until a need arose for use in other States, and accepted or rejected by the taxpayer for use in the functional sense at the ultimate destination. D. Raw materials shipped by sellers outside Georgia, f.o.b. seller's place of business, accepted and stored by the taxpayer in Georgia, consisting primarily of materials used in Georgia to fabricate the truck bodies which were attached to truck chassis, and shipped out of Georgia as completed truck bodies attached to the chassis. E. Materials purchased in Georgia and manufactured or assembled in Georgia and shipped out of Georgia for use by the taxpayer elsewhere. F. Material and items shipped to Georgia by sellers outside Georgia, f.o.b. seller's place of business, stored for an indefinite period in Georgia, but which the taxpayer cannot identify as being manufactured or fabricated in Georgia as the need arose before being shipped out of the State, or as being shipped from Georgia as the need arose in the same form as acquired. G. Items purchased outside Georgia, stored in Georgia, which the taxpayer cannot identify as shipped from Georgia in the original form acquired, or as being manufactured or assembled into larger items before shipment to another State for ultimate use.

All of the items in categories A, B and C, and half of the items in categories F and G were withdrawn from storage in Georgia and shipped outside Georgia as the need arose pursuant to requisition. The items in category E and half of the items in categories F and G were purchased for fabrication in Georgia and use at one of several possible destinations in need of such items. The taxpayer knew the ultimate destination of the items in Category D at the time of purchase.

The value of the materials purchased in Georgia in the *Macon Machine Shop* case, supra, was held to be taxable by reason of withdrawal and fabrication in Georgia to meet a specific need in Tennessee, and thus avoided specific application of the exclusion for personal property "produced in this State for export" or "storage of such property for use in another State," for there was no showing that the steel was produced in Georgia only for export, or that it was stored in Georgia only for use in another State. Likewise in the present case the element of fabrication or assembly is present in respect to the materials in category D purchased in Georgia, without any showing that the materials, as produced in Georgia or present in storage in Georgia, were only produced for export or only stored in Georgia for use in another State.

Consonant with the ruling in Division 2 of this opinion, however, we think that § 4 does exclude a tax on the value of items of personal property at rest or present in Georgia, whether originally produced in Georgia or brought into Georgia from another State, where the presence is at all times explained by the taxpayer by an intention to ship the property out of Georgia, which is fulfilled by actually shipping the property out of Georgia while still identifiable as the property brought into Georgia or produced in Georgia, and which, although repaired or stored in Georgia, is not substantially changed by any fabrication or manufacturing process or other acts indicative of use or consumption of the property in Georgia. Such a test gives meaning to the exclusions of § 4 preceding the exclusion on bona fide interstate commerce in limiting, qualifying, or explaining the declared intent of § 4 to levy a tax on the use, consumption, distribution, and the storage to be used or consumed in this State of tangible personal property after it has come to rest in this State. The presence of none of the property in Georgia other than the chassis is explained by the stipulated facts in a manner which discloses the presence of essential elements of the above test to exclude a levy of the tax. The stipulated facts do disclose that the property apparently came into Georgia or was present in Georgia for yet undetermined uses, despite the possibility or probability of ultimate use elsewhere, or in the case

of pre-determined uses, was fabricated in Georgia or handled by the taxpayer in such a manner that no basis is shown to exclude the levy on a taxable event in Georgia and the trial court did not err in so holding.

■ Even if taxable transactions occurred in Georgia, however, the taxpayer claims credit for taxes paid in other States. Section 10 of the Sales and Use Tax Act as amended (Ga. L. 1951, pp. 360, 371; 1953, Nov. Sess., pp. 369, 370; *Code Ann.* § 92-3412a) purports to set forth the conditions and procedures to allow credit for like taxes paid in other States. The tax does not apply "in respect to use or consumption, or distribution, or storage . . . for use or consumption in this State upon which a like tax equal to or greater . . . has been paid in another State." Where the amount paid in another State is "not equal to or greater" the tax in Georgia is the difference. Credit for taxes paid in another State is not applicable unless that State grants "like credit for taxes paid in Georgia." The taxing provisions of § 2 of the Act as amended (Ga. L. 1951, pp. 360, 362; 1960, pp. 153, 154; *Code Ann.* § 92-3402a (b)) provide that "there shall be *no duplication* of the tax" and that the tax imposed is "subject to the *credit* hereinafter authorized *for like taxes previously paid* in another State." Also, see § 11 of the Act (Ga. L. 1951, pp. 360, 372; 1953, Nov. Sess., pp. 377, 378; *Code Ann.* § 92-3413a) applying the tax unless "said property has previously borne a sales or use tax in another State equal to or greater than the tax imposed" in Georgia.

Insofar as Georgia seeks to avoid double taxation it is clear from these provisions that the intent in Georgia is to allow credit for the like taxable incident which first occurs in another State and to collect a tax based on a taxable incident in Georgia occurring thereafter, but only to the extent of the difference between a lesser like tax previously paid and the Georgia tax, and only if the other State has a reciprocal law. The claim of the taxpayer for credit for taxes paid in other States is based only on taxes paid in destination States, i.e., following a taxable event in Georgia, and therefore § 10 of the Act does not apply. See *Hawes v. Ingalls Iron Works Co.*, 117 Ga. App. 80, 87 (159 SE2d 434). The statement appearing in *Macon Machine Shop*,

*Inc. v. Hawes,* 118 Ga. App. 280, 283, supra, "nor does it appear in this case that any tax has been paid in Tennessee so as to invoke the provisions of *Code Ann.* § 92-3412a involving double taxation" is merely obiter to the extent that it may imply that a credit would be available under § 10 for taxes paid to the State of destination subsequent to a taxable event in Georgia.

■ Conceding that under the Commerce Clause of the United States Constitution interstate commerce cannot be subjected to the burden of multiple taxation (see Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U. S. 157, 170 (74 SC 396, 98 LE 583); General Motors Corp. v. Washington, 377 U. S. 436, 440 (84 SC 1564, 12 LE2d 430)), no controlling precedent has come to our attention to require a holding that the taxes, as here assessed and collected by Georgia under the statutes imposing a sales and use tax and permitting credit on Georgia taxes for like taxes previously paid, but without credit for like taxes imposed in the State of ultimate destination, creates a multiple taxing situation on interstate commerce, which Georgia must resolve, to avoid an unconstitutional application of its taxing statutes, as contended by the taxpayer, by deferring to the State of ultimate destination imposing like taxes. Which State should defer may be a policy matter which addresses itself to the Congress of the United States. See the concluding statement of the majority opinion in National Bellas Hess, Inc. v. Department of Revenue of the State of Illinois, 386 U. S. 753, 760 (87 SC 1389, 18 LE2d 505).

■ The claim of the taxpayer of equitable estoppel, by reason of any previous acquiescence of the commissioner's predecessor in procedures suggested by the taxpayer, and on which the taxpayer relied, is without merit. See *Standard Oil Co. of Kentucky v. State Revenue Commission,* 179 Ga. 371 (6b) (176 SE 1); *Hawes v. Nashville, C. & St. L. R. Co.,* 223 Ga. 527, 530 (156 SE2d 455).

*Judgment affirmed. Eberhardt and Pannell, JJ., concur.*