THOMPSON, Commissioner, *v.* EASTERN AIR LINES INC.

No. 15318.   JANUARY 9, 1946.

220

*Eugene Cook, Attorney-General, Marshall L. Allison* and *Fred B. Davis, Assistant Attorneys-General,* for plaintiff.

*Gambrell & White, Smith, Kilpatrick, Cody, Rogers & McClatchey,* and *Powell, Goldstein, Frazer & Murphy,* for defendant.

*Lindley W. Camp,* as amicus curiæ.

DUCKWORTH, Justice. (After stating the foregoing facts.) The act of 1937 (Ga. L. 1937, p. 167) imposes an excise tax "upon the sale or use of motor fuel . . within this State." There is no sale involved here, and consequently the tax assessment depends for support in law upon whether or not there has been a "use" of motor fuel in contemplation of that word as employed in the statute. Thus, at the very threshold of our consideration of this case, we encounter the necessity for a determination of the meaning of that word "use" as employed in the statute. That the motor fuel here involved was in interstate commerce at the time of its transportation from without this State to the place of storage within the State, and also while used as fuel in the defendant's airplanes which were engaged exclusively in interstate commerce, and therefore not subject to the tax here claimed, is settled law. Article 1, section 8, paragraph 3, United States Constitution; Helson *v.* Kentucky, 279 U. S. 245 (49 Sup. Ct. 279, 73 L. ed. 683); Bingaman *v.* Golden Eagle Lines, 297 U. S. 626 (56 Sup. Ct. 624, 80 L. ed. 928). This narrows the period and the place where the tax claimed could be constitutionally imposed to its storage and withdrawal. The tax could be imposed upon storage and withdrawal without offending the Constitution of the United States. N. C. & St. L. Ry. *v.* Wallace, 288 U. S. 249 (53 Sup. Ct. 345, 77 L. ed. 730, 87 A. L. R. 1191); Edelman *v.* Boeing Air Transp., 289 U. S. 249 (53 Sup. Ct. 591, 77 L. ed. 1155); American Airways Inc. *v.* Grosjean, 3 Fed. Supp. 995, affirmed 290 U. S. 596 (54 Sup. Ct. 129, 78 L. ed. 524). It follows that the question which must be decided here is limited to whether or not, when properly construed according to established rules of construction, the statute does in fact impose the tax

claimed upon storage and withdrawal, which were the only operations that could be lawfully taxed. The excellent briefs of counsel on both sides demonstrate that the word "use" has an exceedingly broad meaning, by citing definitions contained in dictionaries and definitions found in decisions of many courts. Such varied definitions are interesting and informative; and if, under controlling rules for the interpretation of statutes which we must observe, it were permissible to ascribe to the word "use" as here employed any possible meaning to be found in any such definitions, we would be inclined to hold that it is comprehensive enough to embrace storage and withdrawal. But the courts of this State are not allowed such unlimited scope in the interpretation of a statute. By the mandate of law (Code, § 102-102), we are required to give the word its ordinary signification. *Standard Steel Works Co.* v. *Williams,* 155 *Ga.* 177 (116 S. E. 636); *State of Georgia* v. *Camp,* 189 *Ga.* 209 (6 S. E. 2d, 299). In applying this rule of construction, it was stated in *Persons* v. *Hight,* 4 *Ga.* 474, 486: "The current of authority in this country, at least at the present day, is in favor of reading statutes according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. The words of a statute, says Chancellor Kent, if of common use, are to be taken in their natural and ordinary signification; and this is now received as an elementary rule." When put to this test, the word "use" at once takes on a clear and very definite meaning as applied to motor fuel. It would hardly be denied that the natural and ordinary meaning of the use of motor fuel is to consume it by combustion in a motor or for cleaning purposes or other uses that either consume it or at least render it unsuitable for future use as fuel for a motor. It is by its very nature not adaptable to repeated uses, and hence to speak of use is to signify its consumption or destruction. To use it in the ordinary sense means the very opposite of preserving it by storage. Counsel for the Revenue Commissioner contend that, since the Supreme Court of the United States in Edelman *v.* Boeing Air Transp., supra, referred to storage and withdrawal of motor fuel as "use," and since, in Sparling *v.* Refunding Board, 189 Ark. 189 (71 S. W. 2d, 182), and Central Vermont Ry. Inc. *v.* Campbell, 108 Vt. 510 (192 Atl. 197, 111 A. L. R. 175), the

word "used" as employed in motor-fuel tax statutes was construed to mean storage and withdrawal, the word "use" as here applied to motor fuel embraces storage and withdrawal. The decisions relied upon do not control here. In Edelman v. Boeing Air Transp., supra, the question for consideration was whether or not such a motor-fuel tax offended the commerce clause of the United States Constitution, and it does not appear that the statute there under consideration was enacted under the circumstances attending the enactment of our law. The State court decisions relied upon are not binding upon this court, and it does not appear that the laws in those States controlling the construction of statutes were the same as or similar to our law, and neither does it appear that a motor-fuel tax statute containing, as our old law did, a provision expressly imposing the tax upon storage and withdrawal had been repealed by the statute there construed. If all the circumstances there had been the same as those here, much weight would be given to those decisions. *Slaton* v. *Hall,* 172 *Ga.* 675 (158 S. E. 747); *Laslie* v. *Gragg Lumber Co.,* 184 *Ga.* 794 (193 S. E. 763, 113 A. L. R. 932). But this court long ago, in *Thornton* v. *Lane,* 11 *Ga.* 459, stated in unmistakable terms the rule that the decisions of the courts of other States are not binding upon this court; that they are mere opinions, and would be followed only in case this court considered them sound and saw fit to follow them.

But if it be conceded that such decisions of other courts, together with definitions of the word "use" cited by counsel for the Revenue Commissioner, indicate that the word "use" as here employed might embrace the operations of storage and withdrawal, this would only cause the meaning of the statute to become doubtful, and in the interpretation of a doubtful statute we are governed by certain rules, the controlling rule being that the legislative intent be ascertained and given effect. *Ex'rs of Henderson* v. *Alexander,* 2 *Ga.* 81, 85; *Bacon* v. *Jones,* 116 *Ga.* 136 (42 S. E. 401); *Evans* v. *Evans,* 190 *Ga.* 364 (9 S. E. 2d, 254); *Carroll* v. *Ragsdale,* 192 *Ga.* 118 (15 S. E. 2d, 210). In applying this rule, we are aided greatly by the fact that the existing law which this act repealed contained a provision expressly imposing the tax upon storage and withdrawal, thereby unmistakably signifying a legislative purpose to do away with the law that imposed the tax upon

such operations. The new statute made no attempt to re-enact the old provision, although the legislature knew at the time that the old law had been construed by the Attorney-General to be valid and to impose the tax upon storage and withdrawal, and that this defendant's predecessor corporation had accepted such construction and was paying the tax upon storage and withdrawal. Could it be said that the legislature intended to abandon its own language, which was demonstrating its sufficiency to collect the tax, and take the chance that the word "use" would be construed to mean the same thing, and this notwithstanding the fact that the members of the General Assembly knew that the rules of construction require that it be given its natural and ordinary meaning, which did not include storage and withdrawal?

Counsel for the Revenue Commissioner contend that a portion of the caption, wherein it is stated in substance that the purpose of the act was to provide more stringent laws and regulations for the collection of the tax, shows a legislative intent to impose the tax upon storage and withdrawal by the word "use." Courts may examine the caption as an aid to interpretation of a doubtful statute. *Eason* v. *Morrison,* 181 *Ga.* 322 (182 S. E. 163). But the application of this rule here does not sustain the contention made. The caption states an intention to repeal the entire law imposing taxes upon motor fuel and to enact a new law for that purpose. The portion of the caption relied upon by the Revenue Commissioner does not state that all laws imposing taxes will be retained or that any law imposing a tax will be enacted. It simply states that more stringent laws and regulations for the purpose of collecting such tax as is by the act imposed will be enacted. We are not here dealing with any portion of the act which is intended merely as an instrument for the collection of a tax that is admittedly imposed, but we are dealing solely with the question as to whether the provisions of the law under consideration impose the tax. There is no conflict between the body of the act and the portion of the caption relied upon.

While it would perhaps be true that, by imposing the tax upon storage and withdrawal, the law would thereby prevent an evasion of the tax imposed on sales, there is no question here of an evasion or even a desire upon the part of the taxpayer to avoid paying the tax. On the contrary, as stated above, the defendant's predecessor

corporation handled its motor fuel exactly as is being done by the defendant and voluntarily paid the full taxes imposed on storage and withdrawal under the old law. The purpose or wisdom in repealing and refusing to re-enact a law imposing the tax upon storage and withdrawal is a matter for the exclusive determination of the legislature and is no legitimate concern of the judiciary. *Flint River Steamboat Co.* v. *Foster,* 5 *Ga.* 194 (48 Am. D. 248); *Winter* v. *Jones,* 10 *Ga.* 190 (54 Am. D. 379); *Puckett* v. *Young,* 112 *Ga.* 578 (37 S. E. 880); *Harrison* v. *Hartford Steam Boiler Ins. Co.,* 183 *Ga.* 1 (187 S. E. 648); *Mayes* v. *Daniels,* 186 *Ga.* 345 (198 S. E. 535); *New Amsterdam Casualty Co.* v. *McFarley,* 191 *Ga.* 334 (12 S. E. 2d, 355).

Since this is a tax statute, if of doubtful meaning another rule of construction must be applied, which is that it must be construed liberally in favor of the taxpayer and against the State. *Mayor &c. of Savannah* v. *Hartridge,* 8 *Ga.* 23; *Standard Oil Co.* v. *Swanson,* 121 *Ga.* 412, 414 (49 S. E. 262); *McIntyre* v. *Harrison,* 172 *Ga.* 65 (157 S. E. 499); *Vincent* v. *Poole,* 181 *Ga.* 718 (184 S. E. 269); *Forrester* v. *Interstate Hosiery Mills,* 194 *Ga.* 863 (23 S. E. 2d, 78).

In addition to the foregoing reasons why we hold that the tax here claimed is not imposed by the law, there have been more than six years of administrative interpretation, obviously approved by the legislature, holding that such tax was not imposed. Shortly after this law was approved in 1937, the Attorney-General ruled that it did not impose the tax upon storage and withdrawal. The Comptroller-General, who was at that time the State official charged with the duty of collecting the tax, ruled that the law did not impose the tax upon storage and withdrawal. Successive State Revenue Commissioners, who succeeded the Comptroller-General as the State official charged with the duty of collecting such taxes, followed the previous rulings that such a tax was not imposed. During this time the General Assembly convened a number of times and amended the law in other respects without ever amending it to impose the tax upon storage and withdrawal. And finally, by an amendment approved on February 28, 1945 (Ga. L. 1945, p. 158), the legislature expressly provided that no tax should be imposed upon storage and withdrawal. In the interpretation of doubtful statutes, much weight will be given such administrative

and legislative interpretations. *Solomon* v. *Commissioners of Cartersville,* 41 *Ga.* 157; *Slate of Georgia* v. *Camp,* 189 *Ga.* 209 (supra); *Wilson* v. *Pollard,* 190 *Ga.* 74 (8 S. E. 2d, 380). Since it is held that the law either plainly fails to impose the tax or at least is doubtful, and under the rules must be construed as not imposing the tax, the rule requiring the courts to give unambiguous statutes the interpretation which their language clearly implies, irrespective of contrary administrative interpretations, as held in *Standard Oil Co.* v. *Slate Revenue Com.,* 179 *Ga.* 371 (176 S. E. 1), *Elder* v. *Rome Building &c. Asso.,* 188 *Ga.* 113 (2) (3 S. E. 2d, 75, 122 A. L. R. 738), and *Suttles* v. *Northwestern Mutual Life Ins. Co.,* 193 *Ga.* 495 (19 S. E. 2d, 396), does not conflict with our ruling. The law does not impose the tax claimed, and the assessment offends the due-process clause of the Federal and State Constitutions, as held by the trial court, and is void.

*Judgment affirmed. All the Justices concur.*