REPUBLIC STEEL CORP. *v.* McCASTLAIN, COMM'R

5-3923                                403 S. W. 2d 90

Opinion delivered May 30, 1966

*William H. Bowen, Jerry T. Light, Smith, Williams, Friday & Bowen,* for appellant.

*Lyle Williams, Hugh Brown, Ben Rowland, Tom Tanner,* for appellee.

PAUL WARD, Justice. This appeal tests the right of the Arkansas State Revenue Commissioner (appellee herein) to collect a certain compensation tax (or use tax) from the Republic Steel Corporation (appellant herein).

Litigation over the tax arose in the manner presently mentioned. In 1961 appellant, in performing a contract, installed reinforcing steel bars at certain missile-launching sites in this State. The bars were manufactured by appellant at its plant in Chicago out of raw ma-

terials taken from its stockpiles at the plant, and then shipped here for use. Appellant paid to appellee the sum of $20,718.29, being 3% of the cost of said raw materials. However appellee took the position appellant must pay, as a tax, 3% of the value of the finished product, which tax would amount to $58,059.40. The difference of $27,-341.20 was paid by appellant under protest, and it then brought this suit to recover same. All facts, stated above and stated hereafter, were stipulated and are not in dispute here.

At the trial below appellant contended: (a) the disputed tax is arbitrary and unauthorized by §§ 4 and 5 of Act No. 487 of 1949; (b) the proposed tax is contrary to the Constitution of the State of Arkansas (Art. 2 § 3, Art. 16 § 5) and the Constitution of the United States, (Article 1, § 8 Cl. 1, and Amendment 14, § 1.)

The cause was submitted on stipulated facts, and the trial court held the additional tax was legal and should be paid by appellant. We have reached the conclusion that the trial court must be affirmed.

In 1949 the Legislature passed Act No. 487, being Ark. Stat. Ann. §§ 84-3101 to 84-3128 (Repl. 1960) designated as "The Arkansas Compensation Tax Act of 1949"—hereafter referred to as the Act. We copy below pertinent portions of the Act. § 84-3105, (a) in part, reads:

> "There is hereby levied and there shall be collected from every person in this State a tax or excise for the privilege of *storing, using or consuming,* within the State, any article of tangible personal property, after the passage and approval of this Act . . . , purchased for *storage, use or consumption* in this State at the rate of three per centum (3%) of the *sales price* of such property." (Emphasis ours.)

The emergency clause of the Act relative to the issues here raised, reads:

"Since the enactment of the Arkansas Retail Sales Act, Arkansas has been placed in the peculiar category of discriminating against its home merchants. This Act attempts to rectify the evil by placing domestic merchants upon an equal plane with foreign merchants."

In urging a reversal appellant emphasizes four separate points, but we think the decisive issue will be simplified by setting out certain pertinent facts and circumstances.

(a) Appellee concedes this State cannot impose a tax on the sale of the raw materials to appellant because that transaction (standing alone) took place outside the jurisdiction of this State. (b) It is appellee's theory and contention that the tax is on each completed unit (steel bar) and not on its component parts. (c) It is undisputed that appellant (acting as a contractor—not a manufacturer) brought the completed units from Illinois to this State for the purpose of "using" them in the missile sites in this State.

Therefore it appears from the above that (with the exception later noted) the transaction here involved falls squarely within the language of the statute. That is, appellant brought "tangible personal property" into this State and it exercised "the privilege of . . . using" it in this State. The "exception" noted above is the contention of appellant that there was no *sale* of the steel bars to it, and that the Act requires such sale. We are not persuaded by appellant's argument for the reasons hereafter discussed.

Assuming, for the purpose of this discussion, that the Act (to be effective here) requires a sale to appellant it must be conceded that there was no such *sale* according to the ordinary usage of that word. However, under our decisions and the facts here admitted, we hold that there was a *sale* to appellant (the contractor) in this

instance. It must be remembered that appellant, in a manner, acted in two separate and distinct capacities—as a *manufacturer* it created or fabricated the steel bars, while as a *contractor* it used them to perform its contract in this State. As a manufacturer appellant transferred its title in the steel bars to itself or its agent in the capacity of a contractor. The case of *Mann* v. *McCarroll, Commissioner of Revenues,* 198 Ark. 628, 130 S. W. 2d 721, construed parts of section 4 of Act 154 of 1937, which reads:

> "There is hereby levied upon and shall be collected from all *retail sales* . . . a tax of 2% . . . . " (Emphasis ours.)

Among other things this Court there said:

> "The suggestion that the retail dealer who takes from his stock articles held therein for retail sale by him, upon which tax should be collected, is subject to the tax is not inconsistent with the language used and must admittedly be an interpretation under which the language so interpreted must be regarded as legal and enforceable."

This Court construed Act 386 of 1941—"The Arkansas Gross Receipts Act", in the case of *Cook, Commissioner of Revenues* v. *Southwest Hotels, Inc.,* 213 Ark. 140, 209 S. W. 2d 469. Part of section 3 of the Act reads:

> "There is hereby levied an excise tax of (2%) per annum upon the gross proceeds or gross receipts derived from all *sales* . . . . " (Emphasis ours)

This Court said:

> "It cannot be doubted . . . that one who withdraws merchandise or commodities from his commercial establishment or stockpile, or who reserves it for personal use, is chargeable with the two percent tax."

The above language is most persuasive when applied to the situation before us here. In the *Cook* case the *tax* was based on the *sales* of property while in the case before us the tax is based on "the privilege of storing, using or consuming".

It is true that the Act uses the words "sales price" which certainly is normally some indication there must be a *sale,* but we do not read this Act to mean there must be an ordinary sale before the tax is payable. It must be realized that it was necessary for the Legislature to provide a method of determining the basis to which the 3% would apply. We can think of no better basis than the sales price of the article.

There has been much argument concerning the purpose of the Act—whether it was intended to cover the situation in this case. The purpose could not be made plainer than the wording of the emergency clause previously copied. One illustration will demonstrate that the theory advanced by appellant would thwart the intent of the Legislature as expressed in the emergency. In bidding on the contract here involved appellant would have a $58,059.49 advantage over a contractor from Arkansas or from any of the other states who wished to enter a bid.

It is appellant's view that this case should be reversed on the authority of *Halliburton Oil Well Co.* v. *Reily,* 373 U. S. 64 (1963), but we cannot agree. There the Court said the "sole issue before us is whether the Louisiana use tax as applied to appellant, discriminates against interstate commerce in violation of the Commerce Clause of the Constitution". In holding that the tax did violate the Constitution the Court said:

> "As noted by the Louisiana Supreme Court below and approved in *Silas Mason,* the purpose of such a sales-use tax scheme is to make all tangible property used or consumed in the State subject to a uniform tax burden irrespective of whether it is ac-

984

quired within the State, making it subject to the sales tax, or from without the State, making it subject to a use tax at the same rate. The appellant admits the validity of such a scheme." (Emphasis ours.)

The Court then proceeded to reverse the case on other grounds not present here. We can see no material difference between the tax plan copied above and the plan here involved, and appellant has pointed out none.

In accord with what we have heretofore said the case is affirmed.