43140.   HAWES, Commissioner v. INGALLS IRON WORKS COMPANY.

ARGUED OCTOBER 3, 1967—DECIDED JANUARY 9, 1968.

*Arthur K. Bolton, Attorney General, William L. Harper, Louis F. McDonald, Assistant Attorneys General, Joel M. Feldman,* for appellant.

*Westmoreland, Hall & O'Brien, Harry P. Hall, Jr.,* for appellee.

*Powell, Goldstein, Frazer & Murphy, B. D. Murphy, Larry I. Bogart,* amicus curiae.

HALL, Judge. ■ A part of the additional assessment was on structural steel fabricated by Ingalls in its shops outside Georgia and used by Ingalls in performing its contract to furnish and erect the structural steel in the Atlanta Stadium. Relative to this part of the assessment, these facts are undisputed: Ingalls sells fabricated steel to contractors who have contracts for erection of structural steel. Ingalls purchases its structural steel from rolling mills and fabricates it according to architects' drawings and specifications for particular structures. Fabrication processes include cutting, shaping, welding, bolting, painting, fitting, milling, drilling. Ingalls also engages in contracts to erect structural steel and itself fabricates the steel used in these contracts. Ingalls contracted to furnish and erect all structural steel for the Atlanta Stadium. To perform this contract it ordered structural steel from rolling mills in specified sizes (except for a fractional percentage of the quantity required which it took from its own stock), fabricated the steel at its shops outside Georgia, shipped it to the stadium site and erected it. Ingalls paid use taxes at 3% of the purchase price of the steel from the rolling mills. The Commissioner's additional assessment is based upon the additional cost to Ingalls of fabricating the steel before shipping it into Georgia, as shown by Ingalls' books of accounts.

■

The Commissioner terms Ingalls a "dual operator" because in its business it both sells fabricated steel to erection contractors and performs erection contracts itself for which it also fabricates the steel. Such a "dual operator" would, as the evidence in this case shows, collect a sales or use tax on the price of fabricated steel sold to another erection contractor. The Commissioner contends that such a taxpayer should be treated as a consumer of the fabricated steel used in its own erection contracts and liable for a use tax based on the cost of the steel when fabricated for use in its erection contract.

The Commissioner argues that the following statutory provision is applicable and authorizes this treatment: "If a purchaser . . . makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be deemed a retail sale by the purchaser as of the time the property is first used by him, and the cost of the property to him shall be deemed the gross receipts from such retail sale." Ga. L. 1951, pp. 360, 371 (*Code Ann.* § 92-3410a). The Commissioner's reasoning is that when this taxpayer without the state shipped the fabricated steel to its contract site in Georgia, it ceased to deal with the fabricated steel as a manufacturer and commenced to make use of it for a purpose "other than retention, demonstration, or display while holding it for sale in the regular course of business," as a retailer of fabricated steel, and the tax then fell on this "first instance of use within the state," as provided by § 92-3402a. The Commissioner contends that the treatment of Ingalls' shipment of the steel for its erection contract as a conversion to its own use "while holding it for sale in the regular course of business," or as a fictional sale by Ingalls to itself, is also authorized by the inclusive provisions defining "retail sale." "A sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, or services taxable under this Chapter, and shall mean and include any such transactions as the State Revenue Commissioner upon investigation finds to be in lieu of sales: . . ." Ga. L. 1951, pp. 360, 364 (*Code Ann.* § 92-3403a).

The Commissioner argues that these provisions would be

applicable also to a "dual operator" taxpayer within the state. In other words, if Ingalls were inside Georgia, as a "dual operator" it would be liable for a sales tax, as he has assessed Ingalls for a use tax, at the time it designated fabricated steel for an erection contract of its own, considering this a transaction "in lieu of sales" under § 92-3403a, or a use of property "while holding it for sale in the regular course of business" under § 92-3410a.

The Commissioner's argument assumes facts contrary to the evidence of Ingalls' business operations. There is no evidence that the steel used in the Atlanta Stadium contract (other than a small fractional percentage) was ever held for sale in the regular course of Ingalls' business. The evidence was that Ingalls purchased this steel from rolling mills to fulfill this contract.

To support his position the Commissioner relies principally on Republic Steel Corp. v. McCastlain, 240 Ark. 979 (403 SW2d 90). The facts as revealed by the opinion in that case differ from this case in that the steel bars shipped and installed by Republic, the Illinois taxpayer, at missile-launching sites in Arkansas "were manufactured by [Republic] at its plant in Chicago *out of raw materials taken from stockpiles at the plant."* The Supreme Court of Arkansas did hold that there was a sale and transfer of title of the steel bars (fabricated steel) by Republic as a manufacturer to Republic as a contractor. As we understand the decision, it was based on an Arkansas precedent holding that a retail dealer who withdraws and uses articles from his stock held for retail sale is subject to the tax; on an expressed statutory intention to place "domestic merchants on an equal plane with foreign merchants"; and on the fact that Republic, if it were taxed on the cost of the raw steel taken from its stockpile, would have an advantage over a contractor from Arkansas or another state in bidding on a steel erection contract. It is true that under our decision in the present case taxpayers both inside and outside the state who fabricate steel and both sell it to other contractors and use it in their own erection contracts, will be liable for less tax on the steel used in their own erection contracts than will erection contractors who do not fabricate their own steel. However, assuming that a legal plan

could be devised by the legislature to alleviate this competitive advantage of contractors who both fabricate and erect steel, and of "dual operators," we do not find it in the present Georgia statute. We find no authority in the statute for different treatment of transactions of the same kind depending upon whether the taxpayer is engaged in only one kind of business enterprise or more than one kind. We are of the opinion, therefore, that this court should not create a fictional transaction. *Thompson v. Eastern Air Lines*, 200 Ga. 216 (39 SE2d 225). Ingalls in its business of selling fabricated steel to other contractors must be treated like all other companies engaging in this business, inside and outside Georgia. In its erection contract business it must be treated like other companies engaging in erection contracts, inside and outside Georgia.

Ingalls is liable for the use tax as a "person who contracts . . . to furnish tangible personal property and perform services thereunder within this state" and is liable for the tax as a consumer of the tangible personal property "at the time of the purchase" or, when the contractor "fails to pay the sales tax thereon at the time of the purchase *or the sale is consummated without the limits of this state* shall be liable for the payment of the sales or use tax." Ga. L. 1955, p. 389 (*Code Ann.* § 92-3448a). Under this provision, if Ingalls' only business was fabricating and erecting steel for its own contracts, that is, if it was not a "dual operator," it would not pay a sales tax when it purchased structural steel outside Georgia but would be liable for payment of the use tax. The use tax is levied upon the owner or user of *tangible personal property purchased at retail outside the state, at the time* of the first use of the property within the state. § 92-3402a (b). "Use" is defined as including "the exercise of any right or power over tangible personal property incident to the ownership thereof." § 92-3403a (I). The tax is measured by "the cost price or fair market value thereof [of tangible personal property purchased at retail outside this state] whichever is the lesser" (§ 92-3402a (b)), and "cost price" is defined as "the actual cost of articles of tangible personal property. . . ." § 92-3403a (F).

The difficulty in determining the measure of the use tax comes

from the fact that, at the time of Ingalls' first use within the state of the "tangible personal property purchased at retail outside the state," the property was not in the same form that it was at the time it was purchased. Ingalls shipped into the state fabricated steel which was not, as such, "purchased at retail outside the state." But Ingalls did use in Georgia "property purchased at retail outside the state"—raw steel—in an altered form. Taking "cost price" as the basis for the use tax and applying the "actual cost" definition, we could reasonably say that the "actual cost of articles of tangible personal property," "upon the first instance of use" within the state included the cost of converting the raw steel to the fabricated state. This view would support the Commissioner's assessment. But this would result in greater tax liability to fabricator-erection contractors outside the state than to those inside the state, and would be unlawfully discriminatory. Halliburton Oil Well &c. Co. v. Reily, 373 U. S. 64 (83 SC 1201, 10 LE2d 202). Suppose Ingalls' business was only fabricating and erecting steel for its own contracts, and all its fabricating and erection processes took place in Georgia. The Commissioner concedes that under *Code Ann.* § 92-3448a, if it purchased its raw steel in Georgia it would pay the sales tax at the time of the purchase. If it purchased its raw steel outside Georgia, it would pay the use tax at the time the steel entered Georgia on the "cost price" or "actual cost" of the raw steel. The cost of fabricating the steel would never be included in the tax base because this would take place in Georgia.

To prevent unlawful discrimination between taxpayers within and without the state we must look at the two applicable taxing provisions in another way. Ingalls is to be taxed "upon the first instance of use . . . within this state of *tangible personal property purchased at retail outside this state* . . . at the rate of three percent of the cost price or fair market value thereof, whichever is the lesser. . ." (Emphasis supplied). § 92-3402a. " 'Cost price' means the actual cost of articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor, or service costs, transportation charges, or any expenses whatsoever." § 92-3403a (F). Ingalls did not purchase *fabricated steel* outside the state. Fab-

ricated steel is not, as such, an article of "tangible personal property purchased outside the state." The only article of "tangible personal property purchased outside the state" to be taxed "upon the first instance of use within the state" was raw steel. Unless we use as the measure of the use tax the "cost price"— "actual cost"—of the raw steel when purchased, assessing the tax on the cost price of the property "purchased at retail outside the state"—raw steel—at the time of the first instance of use (in an altered form) within the state, there will be a disparity, as shown above, in the amount of tax a "dual operator" taxpayer must pay depending on whether its business is carried on outside or wholly within Georgia. We must therefore hold that this is a correct measure of Ingalls' use tax liability, to avoid an application of the statute that would be unconstitutional. *Forrester v. Culpepper*, 194 Ga. 744, 749 (22 SE2d 595).

The judgment of the trial court was not erroneous in reversing the Commissioner's additional use tax assessment on the structural steel.

■ A smaller part of the assessment was on Ingalls' erection equipment which Ingalls brought into Georgia and later removed after it used the equipment in performing the Atlanta Stadium contract and other contracts for steel erection in power plants of the Georgia Power Company. On this erection equipment Ingalls paid a use tax using as its basis a figure approximating the rental value of the equipment for the period of its use in Georgia. In making the additional assessment the Commissioner used the book value of the equipment, as reflected by Ingalls' accounting books, as fairly representing its fair market value. Ingalls contends that the Commissioner's basis in this situation results in a discriminatory tax because, (1) Ingalls will have to pay the same amount of tax for using the equipment temporarily in Georgia that would be payable by a taxpayer who imported and used the same property permanently in Georgia; and (2) had it rented the same equipment for the same period of use, it would be liable for the tax only on the rental charge. § 92-3402a (c), (d).

"Upon the first instance of *use*, consumption, distribution, or storage within this State of tangible personal property purchased

at retail outside this State, the owner or user thereof shall be . . . liable for a tax at the rate of three percent. of the cost price or fair market value thereof, whichever is the lesser: Provided there shall be no duplication of the tax and subject to the credit hereinafter authorized for like taxes previously paid in another State." § 92-3402 (b). The credit for taxes paid in another state is provided by § 92-3412a: "The provisions of this Chapter shall not apply in respect to the use or consumption, or distribution, or storage of tangible personal property for use or consumption in this state upon which a like tax equal to or greater than the amount imposed by this Chapter has been paid in another State, the proof of payment of such tax to be according to rules and regulations made by the Commissioner. If the amount of tax paid in another State is not equal to or greater than the amount of tax imposed by this Chapter, then the dealer shall pay to the Commissioner an amount sufficient to make the tax paid in the other State and in this State equal to the amount imposed by this Chapter. No credit shall be given under this section for taxes paid in another State if that State does not grant like credit for taxes paid in Georgia." § 92-3412a.

Since § 92-3412a, supra, must be applied when taxes have been paid in another state, we do not see how the discrimination contended by Ingalls would ever take place. In this case Ingalls did not contend or introduce evidence that the Commissioner's figures for "fair market value" were incorrect or unreasonable or more than the cost price of the equipment, or that like taxes had been paid in another state for which it should be given credit.

The rental value basis upon which Ingalls would measure the tax on the use of its equipment in Georgia is not authorized by the statute, the only use tax basis provided being "the cost price or fair market value . . . whichever is the lesser."

The judgment of the trial court was erroneous in reversing the Commissioner's additional use tax assessment as to Ingalls' erection equipment used in performing steel erection contracts in Georgia.

*Judgment reversed for the reason stated in Division 2, with direction that judgment be entered to conform with this decision. Bell, P. J., Jordan, P. J., Eberhardt, Pannell, Deen, Quillian and Whitman, JJ., concur. Felton, C. J., dissents to Division 2.*

FELTON, Chief Judge, dissenting from the judgment as to Division 2. In my opinion, the law cited as *Code Ann.* § 92-3402a (b) was not intended to apply to the equipment of a nonresident contractor using the equipment temporarily within the State of Georgia. Such use is not a retail sale or use defined in this Code section. The first sentence of the section means *permanent* use, consumption, distribution or storage within this State.

The "use" of the equipment was not a retail sale of the property in the regular course of business. *Code Ann.* § 92-3403a (I). " 'Retailer' means and includes every person making sales at retail or for distribution, or use, or consumption, or storage to be *used or consumed in this State.*" Id. (K). (Emphasis supplied.) Under this definition the taxpayer is not a retailer of the equipment.

If there is a provision of law for taxing a resident 3% on the cost or value of equipment used in manufacturing or fabrication, which I doubt, the provision is discriminatory against temporary users of equipment in this State in that the resident would pay the tax one time and use the equipment for months or years, whereas the temporary nonresident user would use the equipment for a lesser time than the life of the equipment. If *Code Ann.* § 92-3402a (b) applies to a resident it would apply only because the contractor would be a dealer as to the equipment because it is to be consumed in the use, in Georgia.

I think the trial court was correct in reversing the assessment dealt with in the second division of the opinion. I concur in the judgment as to the first division of the opinion.