## No. 27238

**Rocky Mountain Prestress, Inc., a Corporation v. Elmer A. Johnson, Manager of Revenue, and City and County of Denver, State of Colorado**

(574 P.2d 88)

Decided February 6, 1978.

Grant, McHendrie, Haines & Crouse, Charles H. Haines, Jr., James E. Brown, Gary Holdeman, for plaintiff-appellant.

Max P. Zall, City Attorney, Donald E. Wilson, Assistant, for defendants-appellees.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Rocky Mountain Prestress, Inc. (Prestress) designs and fabricates pre-cast concrete structural forms for use in its own business of building construction. In 1966, while engaged in constructing a building in the City of Denver, Prestress was advised by the Denver Department of Revenue that it would impose a use tax upon the gross value (exclusive of profit) of all materials, labor, and engineering services used in the design and fabrication of the prestressed forms employed by Prestress in construction projects in Denver.

Prestress petitioned for review of the Department of Revenue assessment. The petition was denied by the Denver Manager of Revenue. Pursuant to *Denver Revised Municipal Code* 166 A.9-7, Prestress then brought this action under C.R.C.P. 106(a)(4). The trial court affirmed the Manager's decision, holding that (1) the concrete forms were properly subject to the use tax, and (2) the value of crane services was includable in the computation of the value of the forms.[1] We hold that the transaction in this

---

[1] The trial court also rejected several constitutional objections to the use tax scheme in this case. These are raised on appeal, but due to our disposition of this case, they need not be considered.

case was not shown to be within the scope of the use tax. Accordingly, we reverse.

### Coverage of the Use Tax Ordinance

In enacting its use tax ordinance, the Denver City Council intended to define a "taxable privilege" in the form of storing, using, distributing, or consuming in Denver "any article of tangible personal property purchased at retail." *Denver Revised Municipal Code* 166 A.3-1(1). A "use" tax upon that privilege is imposed by *Denver Revised Municipal Code* 166 A.3-2(1). The condition precedent of a purchase at retail is defined as "any sale, purchase, lease, rental or grant of license to use tangible personal property except a wholesale sale or purchase." *Denver Revised Municipal Code* 166 A.2-14. Finally, the terms "purchase" and "sale" are defined as:

". . . the acquisition for a price by any person of taxable services or taxable personal property which is used, stored, distributed or consumed within Denver. A transaction shall be deemed to be a purchase or sale if the acquisition of tangible personal property was effected by: (1) the transfer, either conditionally or absolutely, of title or possession or both of the tangible personal property; or (2) a lease, rental or grant of a license to use (including royalty agreements), store, distribute or consume the tangible personal property."

*Denver Revised Municipal Code* 166 A.2-6.

The use of tangible personal property which was taxed by the City of Denver has, under the undisputed facts of this case, the following characteristics: (a) it involves the use of concrete forms by Prestress for construction purposes in Denver, (b) the concrete forms were fabricated by Prestress outside of Denver, (c) each concrete form is unique in the sense that it is individually engineered and fabricated, is not a fungible or interchangeable commodity, and has no significant value beyond use for a specific purpose in a specific building, (d) the concrete forms could be fabricated at the construction site ("on-site") or at a distant facility ("off-site"), and (e) the nature of the prestressed concrete form construction industry is such that the building contractor cannot delegate responsibility for the fabrication of the concrete forms because the fabrication process is integrally related to the building construction process.

In applying the Denver use tax ordinance to the above facts, the trial court held:

"The fact that [Prestress] does not purchase from itself in the ordinary sense is not determinative. When [Prestress] created or fabricated the members, it acted as a manufacturer, and when it used them to build a

building, as a contractor/consumer. The purchase is implied by law in such a situation. *Republic Steel Corp. v. McCastlain*, 240 Ark. 979, 403 S.W.2d 90 (1961). Clearly, if another contractor purchased such prestressed units from plaintiff outside of Denver and incorporated them into a Denver building, said use would be subject to the use tax."

■ Under the facts of this case, we disagree with the trial court's analysis. First, it presumes, contrary to the undisputed evidence at trial, that there exists a market for prestressed concrete forms which is separate from the market for construction of buildings using such forms. As the record indicates, there is not a separate prestressed forms market. Accordingly, the hypothetical postulate relating to the purchase of the units by another contractor is without any foundation in the evidence. The creation of the concrete forms is integrally related to the total construction enterprise carried on by Prestress. Second, it erroneously implies a "purchase at retail," within the meaning of the ordinance, in this case.

In finding this constructive "purchase at retail" for application of the use tax, the trial court relied upon the case of *Republic Steel Corp. v. McCastlain, supra.* In the *Republic Steel* case, steel bars were manufactured by the contractor out of state and then imported into the state for use on the contractor's construction project. Finding that no actual "sale" of the property had occurred between the time of its manufacture and the time of its use, the Arkansas Supreme Court, nonetheless, created a fictional sale to bring the arrangement within the scope of the use tax. This fiction was based on two key considerations: the purpose of the use tax and the dual roles of the taxpayer in that case. The express legislative declaration of intent supporting the use tax ordinance in *Republic Steel* declared:

"Since the enactment of the Arkansas Retail Sales Tax Act, Arkansas has been placed in the peculiar category of discriminating against its home merchants. This Act attempts to rectify the evil by placing domestic merchants upon an equal plane with foreign merchants."
*Republic Steel Corp. v. McCastlain, supra.* The internal management of the taxpayer was characterized in *Republic Steel* in these words:
"[W]e hold that there was a *sale* to the appellant (the contractor) in this instance. It must be remembered that appellant, in a manner, acted in two separate and distinct capacities — as a *manufacturer* it created or fabricated the steel bars, while as a *contractor* it used them to perform its contract in this State. As a manufacturer appellant transferred its title in the steel bars to itself or its agent in the capacity of a contractor." (Emphasis in original.)

While the concept of a fictional purchase at retail may have justifiable utility in some contexts, we do not find its application appropriate in this case. The predicates for creation of the fiction of "dual operator" status in *Republic Steel* are lacking here. First, the use tax statute in-

564

volved in *Republic Steel* contained an express legislative declaration which defined the purpose of the Arkansas use tax as preventing any unfair competitive advantage which would result from imposition of a sales tax alone. This express legislative policy is not present in the ordinance before us. In fact, the hearing record before us reveals that the City took the position that the competitive effects of the tax were immaterial.[2]

A second, and more important, consideration is that the structure of the Prestress organization, as developed in the record, does not fit within the policy behind the fiction. Because no retail market for prestressed structural forms exists, there is no possibility of a competitive advantage for Prestress as the result of the taxation of retail sales in prestressed forms. If the retail sales tax does not apply, then there is no need to correct its ostensible anti-competitive effects by resort to an extended application of the use tax based upon a fictional purchase. This distinction was made clear by the Arkansas Supreme Court in *Georgia Pacific Corp. v. Larey*, 242 Ark. 428, 413 S.W.2d 868 (1967). There, an out-of-state manufacturer of wood paneling used its own product to remodel its in-state offices. In holding that, in fact, "there was no dual capacity transaction," the *Georgia Pacific* court distinguished its earlier *Republic Steel* decision and placed a common-sense limitation upon the "dual operator" fiction. *Id.* The present case is even stronger insofar as, unlike wood paneling, a retail market does not even exist for prestressed forms.

The use tax ordinance, as a matter of proper construction and policy, does not cover the transaction in this case.

## Taxation of the Crane Services

■ Prestress utilizes mobile cranes on the construction site to transport the fabricated structural forms from the ground to their position as part of the building. In upholding assessment of the use tax upon the value of the crane services, the court below held:

"The use of the crane is properly includable in assessing the value of the labor and services used to establish the value of the finished product."

On appeal, the City and County of Denver correctly concedes that "the court erred." However, in order to justify the assessment in this case, it is asserted that "Denver did not make its assessment against the cranes

---

[2]We have observed that, as a general proposition, "[u]se taxes are enacted primarily to equalize the tax burden as ·between those who purchase within and without the state." *Matthews v. Department of Revenue*, 193 Colo. 44, 562 P.2d 415 (1977). However, this general proposition cannot be used to expand an otherwise silent ordinance in this context. As noted in *City of Denver v. Sweet*, 138 Colo. 41, 329 P.2d 441 (1958): "The general rule, long followed in Colorado, is that the taxing power and taxing acts are construed strictly against the taxing authority and in favor of the taxpayer." *Accord, City and County of Denver v. Tax Research Bureau*, 101 Colo. 140, 71 P.2d 809 (1937). A similar analysis was expressly used to distinguish the *Republic Steel* case and bar extension of the "constructive purchase" fiction to a Georgia use tax statute in *Hawes v. Ingalls Iron Works Co.*, 117 Ga. App. 80, 159 S.E.2d 434 (1968).

on the basis that those services were part of manufacturing expenses, but made the assessment on the use of the cranes in Denver, regardless of purpose."

Prestress maintains that the value of the crane services falls within an exemption in the ordinance. *Denver Revised Municipal Code* 166 A.3-3(7) exempts:

"Tangible personal property purchased or acquired for use, storage, distribution or consumption outside of Denver, by a non-resident of Denver, for his own use, storage, or consumption while temporarily in Denver."

Prestress insists that the exemption applies in this case, since it brought the cranes into Denver temporarily "for its own use" in fulfillment of a construction contract. The exemption is not to be construed so broadly.

When the purposes to be accomplished by the enactment of a use tax are considered, it is clear that "for his own use" must be construed to mean "for his personal use." If this were not the case, the exemption would frustrate an essential purpose of the use tax, the recoupment of lost sales tax revenue. Since the use of the cranes in fulfillment of a construction contract cannot be considered to be a personal use, the use tax applies.

■ Our conclusion, however, does not save Denver's use tax assessment in this case. No authority in the ordinance permits Denver to assess a use tax on crane services based upon an assumed hourly rental value. The tax can be validly assessed only on the basis of purchase price or fair market value at the time of first use in Denver, whichever is lower. Denver Dept. of Revenue (Sales, Use and Lodger Tax Section), Auditor's Guide ¶XIIIaf.

Accordingly, we reverse.

MR. CHIEF JUSTICE PRINGLE dissents as to Point 1.