### No. 28435

**International Business Machines Corporation v. Alan Charnes, Executive
Director of the Department of Revenue, State of Colorado**

(601 P.2d 622)

Decided September 24, 1979.          Rehearing denied November 5, 1979.

Davis, Graham & Stubbs, Alan M. Loeb, Donald J. O'Connor, Donald A. Barnes, for plaintiff-appellee.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Chris J. Eliopulos, Special Assistant Attorney General, for defendant-appellant.

*En Banc.*

JUSTICE CARRIGAN delivered the opinion of the Court.

The Executive Director of the Colorado Department of Revenue (Director) determined that International Business Machine Corporation (IBM) is liable for use tax upon the "capitalized cost" or "full finished goods cost" of items it withdraws from its work in process and sales inventories and diverts to its own intracompany use within Colorado.

After a trial *de novo*, the district court reversed, holding that a use tax may be imposed upon only the "materials cost" of such items diverted for internal use. The Director had asserted the use tax against the higher "full finished goods cost" or "capitalized cost" by promulgating a regulation[1] to that effect. The district court held that regulation void. The Director appealed. We affirm the district court.

---

[1] The regulation at issue provides that "[t]angible personal property that was purchased tax free for resale or as an ingredient of a manufactured or compounded product and is subsequently withdrawn from stock and/or modified prior to use shall be taxed at the full finished goods cost of all materials, labor and other charges usually included in a work-in process inventory." Dept. Rev. Reg. 138-5-34(3).

IBM manufactures and sells business equipment. The company regularly withdraws certain goods and items from its inventories and puts them to its own use in Colorado. These withdrawals include component parts purchased from suppliers, partially completed goods and finished products. Components and partially finished items normally are withdrawn for testing, quality control, and research and development purposes. Finished goods, such as typewriters, computers and copiers ordinarily are taken from inventory and used for their customary, intended purposes in IBM's business.

When IBM, in the course of its normal business operations, buys component parts for fabrication into finished products and ultimate resale, it pays no sales tax. By statute, such purchases are expressly exempted from sales tax as ingredients, or component parts of a product which is manufactured. Section 39-26-102(20), C.R.S. 1973.

At the time it purchases the goods and parts which ultimately are to be withdrawn for its own internal use, IBM ordinarily does not, indeed cannot, identify which items eventually will be so withdrawn and used. But, historically, when such items actually have been selected and used in Colorado, IBM has followed the practice of remitting use tax payments based upon their "materials cost."[2] IBM has not factored its own labor or overhead into the tax base employed in calculating those payments, and thus has used the same tax base for each item as would have applied if the original purchase of that item's component parts or ingredients had not been exempt from sales tax.

The director, however, maintains that IBM owes additional use taxes based upon the "full finished goods cost" or "capitalized cost" of its inventory withdrawals. Both parties have stipulated that the revenue department's asserted formula would impose the use tax not only upon "materials cost" but also upon the increment in value attributable to IBM's addition of its own labor and overhead.

IBM argues, and the trial court held, that a use tax based upon "full finished goods cost" or "capitalized cost" lacks statutory authority and

---

[2] "Materials cost" is the purchase price IBM paid to its suppliers for component parts. Some of those components were used by IBM in the same form in which they were received, while others were utilized as part of an improved or finished product.

actually contravenes a provision[3] of the use tax act.[4] Moreover, IBM persuaded the trial court that the revenue department's regulation[5] exceeded statutory authority and therefore was invalid insofar as it imposed a use tax on "full finished goods cost."

The issue in this case is whether the district court erred in reaching those conclusions in favor of IBM.

A use tax is a levy upon the "privilege of storing, using or consuming in this state . . . tangible personal property purchased at retail." Section 39-26-202, C.R.S. 1973. The use tax is "supplementary" to the sales tax. Section 39-26-203(1), C.R.S. 1973; *Matthews v. State, Department of Revenue,* 193 Colo. 44, 562 P.2d 415, 417 (1977); *Fifteenth Street Investment Co. v. People,* 102 Colo. 571, 581, 81 P.2d 764, 769 (1938); *Bedford v. Colorado Fuel and Iron Corp.,* 102 Colo. 538, 540, 81 P.2d 752, 753 (1938). It ordinarily serves "to equalize the tax burden as between those who purchase within and without the state." *Matthews v. State, supra,* 193 Colo. 44, 562 P.2d at 417. *See Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 66, 83 S.Ct. 1201, 1202, 10 L.Ed.2d 202, 204 (1963).

Although the use tax usually operates to eliminate any tax advantage from purchasing in states with lower sales taxes, or none,[6] IBM's use tax liability arose under different circumstances. IBM incurred use tax obligations because its inventory withdrawals included items and materials that had been exempted from sales tax when originally purchased for the reason that the purchases were then deemed wholesale purchases for resale. Nevertheless, similar policy reasons of interstate sales tax equalization apply.

Given the supplementary nature and equalizing function of the use tax, the burden on the taxpayer should be no greater than necessary to compensate for the sales tax originally avoided on the purchases.

The state, by asserting the use tax against the enhanced finished or "capitalized" value of IBM's inventory withdrawals, rather than against the initial cost of materials and components, has attempted to extend the use tax beyond its intended function. A levy upon the "full finished goods cost" or "capitalized cost" inevitably would have the effect of taxing the company's labor and overhead. In effect, it would amount to a value added tax.

In arguing that an actual retail purchase is not even a necessary antecedent for the use tax, and that an inventory withdrawal should suffice to trigger use tax liability, the state asks us to extend statutory

---

[3] Section 39-26-202, C.R.S. 1973.
[4] Section 39-26-201 *et seq.,* C.R.S. 1973.
[5] Rev. Dept. Reg. 138-5-34(3).
[6] *Matthews v. State, Department of Revenue,* 193 Colo. 44, 562 P.2d 415, 417 (1977).

language which the legislature has left unattenuated. A use tax is imposed upon the storage, use or consumption of "tangible personal property purchased at *retail*." Section 39-26-202, C.R.S. 1973 (emphasis added). Since "tax statutes are construed strictly against the taxing authority,"[7] we cannot conclude, absent circumstances clearly demonstrating a contrary legislative intent,[8] that the term "retail purchase" means — in these circumstances — anything other than an actual retail purchase.

Moreover, the state sounds a false alarm by maintaining that, if a use tax may be actuated only by a retail sale, materials purchased for manufacturing and resale could not be taxed at all if later "stored, used or consumed" by the purchaser. Such purchases are made as wholesale transactions and thus are exempt from sales tax. Section 39-26-102(20), C.R.S. 1973. The contentions of the state that a purchase originally characterized as wholesale cannot later be designated as retail in the light of facts subsequently occurring, and that a purchase must be classified irrevocably as either wholesale or retail at the time of the initial transaction, are erroneous.

■ Many terms are accorded special meanings when employed in the tax context. Thus, the terms "wholesale" and "retail" do not — in the use tax context — bear exactly the same meaning as they do when used in their normal commercial context. Exemption of intermediate sales from use tax is designed to avoid multiple taxation, the goal being to impose the sales or use tax on the final, consumptive transaction. *Carpenter v. Carman Distributing Co.,* 111 Colo. 566, 575, 144 P.2d 770, 774 (1943); *Bedford v. Chicago Fuel and Iron Corp.,* 102 Colo. 538, 543, 81 P.2d 752, 755 (1938). Where, as here, the buyer's ultimate disposition of the item purchased cannot be known at the time of purchase, the transaction's tentative characterization as "wholesale" may be corrected to "retail" by considering later events.

■ Applying that rationale here, it is clear that although IBM's original purchases of parts and materials appeared to be wholesale, and thus exempt from sales tax at the time of purchase, the wholesale transactions were transformed into retail ones upon the company's ultimate election to dispose of the items purchased by using or consuming them in its own business operations rather than reselling them. The state's concern that a purchaser might evade both sales and use taxes by purchasing at wholesale and then converting the items to its own use is groundless, for the transaction must be reexamined at the time of such a conversion.

---

[7] *Rocky Mountain Prestress, Inc. v. Johnson,* 194 Colo. 560, 574 P.2d 88, 91, n.2 (1978), citing *City and County of Denver v. Sweet,* 138 Colo. 41, 52, 329 P.2d 441, 447 (1958).

[8] A fictional purchase, for instance, might be constructed and a use tax imposed, if necessary to prevent any unfair competitive advantage arising from non-applicability of the sales tax. *See Rocky Mountain Prestress, Inc. v. Johnson,* 194 Colo. 560, 574 P.2d 88, 90 (1978).

The state argues that IBM has no right to be taxed on "materials cost" when it withdraws improved goods from inventory. But even though an inventory withdrawal triggers the use tax belatedly, in essence it triggers a retroactive recognition that a previous purchase — earlier thought to be wholesale — actually was retail. Such a purchase at its inception is potentially either wholesale or retail, and since only later events can identify which, it is initially, but only tentatively, treated as wholesale until the occurrence of the events which make possible its correct classification.

The later event which earmarks the earlier purchase as having been retail — withdrawal of the item from inventory — is not itself analogous to the two-party retail sale transaction which evokes a sales tax. One cannot be subjected to a sales type tax for "selling" something to one-self. Therefore, since it is the *prior* purchase for use in Colorado which — in essence — attracts the tax when later recharacterized, the item should be valued for tax purposes at the *prior* time and in the form in which it was then cast. The levy should not be imposed upon the value of an item as measured at the later time of its diversion to use or consumption by IBM. The state's policy of equalizing taxes between sales and use tax obligors is fully satisfied by a tax upon IBM's "materials cost."

The judgment of the district court is affirmed.