Cook, Commissioner of Revenues *v.* Southwest
Hotels, Inc.

4-8490                                        209 S. W. 2d 469

Opinion delivered March 22, 1948.

*O. T. Ward,* for appellant.

*House, Moses & Holmes,* for appellee.

Griffin Smith, Chief Justice. The State alleged that Southwest Hotels, Inc., should pay gross receipts tax on the stipulated value of meals furnished certain of its employees.[1] From a decree restraining the Commissioner of Revenues from enforcing such demands there is this appeal.

Attitude taken by the Commissioner is that in operating their dining service each of appellee's hotels prepares and serves large quantities of foods, some of which is permissively consumed by cooks, waiters, and others

---

[1] Southwest Hotels, Inc., owns and operates the Marion, Lafayette, Albert Pike, and McGehee in Little Rock, and the Majestic at Hot Springs. The amount claimed is $2,961.81.

who are directly connected with the commodity thus dispensed. No charge is made against these employees for the meals they are incidentally permitted to consume; nor is there in the contract of employment any express agreement that meals will be supplied.

Appellee contends that the practice has continued so long that it is controlled by custom, and that the expense is absorbed in an indirect manner incapable of accurate computation. It is conceded, however, that if the meals should be appraised on a commercial basis they would average 25c each.

The Commissioner points to Act 386 of 1941, § 2(d), and to § 3. The first defines 'gross proceeds' or 'gross receipts'. They include the value of any goods, wares, merchandise, or property "withdrawn or used from the established business or from the stock in trade of the established reserves for consumption or use in such business or by any other person". Section 3 levies the two percent tax "upon the gross proceeds or gross receipts derived from all sales to any person", including (subdivision "a") tangible personal property.

The Commissioner's argument is that because "hundreds of establishments are operated by members of a family who in many instances are owners and live on the premises, and who do work in the preparation and serving of foods", it would be placing a strained construction upon the tax law to say that the General Assembly by express language had taxed the value of merchandise withdrawn for consumption or use in the business, or withdrawn for the use of any other person, but that it did not intend to tax hotels for the value of foods consumed by employees directly charged with the duty of preparing and serving meals. It must be conceded that there is some logical support for the contention, and a construction could be given upholding the theory.

On the other hand the Chancellor's injunction finds footing in the settled rule that an intent to tax must appear from the Act relied upon. *Wiseman* v. *Arkansas Utilities Co.*, 191 Ark. 854, 88 S. W. 2d 81. A clear state-

ment of the policy is found in *United States v. Merriam,* 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547, where Mr. Justice SUTHERLAND said that in dealing with statutes levying taxes the literal meaning of the word employed is most important, "for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer".

The tax relied on is levied upon receipts *derived* from sales. Appellee's contention is that before the tax can be collected it must have been a derivative of an authorized sale; that the fair value of all commodities entering into the production of meals was taken into consideration when the price to customers was fixed, and that in fact the tax was collected when the overall cost of meals in gross was computed and then divided by the taxed personal service.

Although the word "derived" as used in Act 386 has a general meaning, we do not agree with appellee that the Commissioner would be compelled to withhold his demand for payment until a tax had actually been collected by the retailer. It is sufficient if the taxpayer *should* have done so. This, however, is not controlling here if the statute is not sufficiently specific in its application to cover the transactions, and we do not think it was.

Reduced to its practical parts, the question before us is whether the General Assembly, in levying the tax on gross receipts derived from a sale, intended to embrace a transaction such as we are dealing with, and further, if the intent existed, was it expressed in language so direct that a reasonable person would not be left in doubt in respect of his obligation? Tested by this rule the Commissioner must fail, even though he is discharging a duty in requiring a judicial construction regarding enforcement.

It cannot be doubted that under § 1(d) of Act 386, one who withdraws merchandise or commodities from his commercial establishment or stockpile, or who reserves it for personal use, is chargeable with the two

percent tax. We think, however, that there is a substantial difference between withholding for use—a transaction tantamount to a sale to one's self—and in permitting employees who prepare and serve food to make incidental and irregular application of that which in a sense may be surplus; and unless it is shown as a matter of fact that, because of such use materially larger quantities are prepared than would be under a different custom, it is difficult to see how a specific sale has been made. There is no showing that without this privilege the employees in question would have drawn better wages, although from a practical standpoint it must be supposed that they would.

Some of the States where a like tax is laid operate under regulations published by the collecting agent, and require payment by hotels and restaurants where the food is supplied in lieu of some part of the employee's salary — notably Colorado, Iowa, Michigan, Missouri, South Dakota, Utah, and Wyoming. In some instances the tax was on value of meals served at restaurants maintained by large industrial concerns, available only to the manufacturer's personnel. Against a defense that the particular statute applied only to public places there are judicial determinations that meals thus served constituted sales within the meaning of the taxing laws.

An analysis and comparison with the Arkansas Act would not be helpful for the reason that under all of our holdings it has been said that tax liabilities do not spring from inexact language, nor do they attach by construction. While Mr. Justice BUTLER's statement in the Wiseman-Utilities case to which reference has been made may be a little broad in its holding that a tax cannot be imposed except by express words indicating that purpose, certainly the express purpose must be so clear that no reasonable mind should conclude the intent was otherwise.

Affirmed.