HOTEL MARKHAM, INC. *v*. STONE.

June 9, 1952.

No. 38459 (59 So. (2d) 308)

**Tighe & Barksdale,** for appellant.

J. H. Sumrall, for appellee.

**Alexander, J.**

Appellant, upon demand by appellee, paid the sum of $443.18, representing sales taxes charged the former on account of meals furnished to its employees as part of their wages. Suit was filed by the hotel to recover such taxes. Code 1942, Section 10122, as amended.

The cause was tried under an agreed statement of facts, the salient parts of which are as follows: "That pursuant to and in line with the custom of restaurant operators in the community where plaintiff does business, and a general custom among restaurant operators prevailing elsewhere, Plaintiff pays its employees a definite and fixed sum of money as wages or salary and also permits its employees to eat their meals at said restaurant while on duty, free of any charge. However, no allowance is made for any meal not eaten by any of said employees. Said employee is permitted to eat all kinds of food prepared each day at the restaurant for the public but not sold, but said employee is not permitted to eat what is commonly know as 'a La Carte orders' or food that is necessary to be prepared specially for such employee. There is no distinction made among the employees with respect to the quality of food each is permitted to eat; and there is no limitation with respect to the quantity of food employee may eat, except to the extent that any desired and permissible food may be on hand. That the food the employees are permitted to eat is the food purchased and prepared for sale to the public and remaining on hand after the public has been served a particular meal, and the employees are

permitted to eat the same food served guests, except 'a La Carte orders', as hereinabove mentioned.''

The period covered by the taxes so exacted is from September 1947 to September 1950. It is agreed that pursuant to such custom, and in line with procedures and valuations utilized in estimating taxes paid to the Mississippi Employment and Security Commission and in computing premiums to the compensation carriers under our Workmen's Compensation Act, the hotel fixes the value of such meals so furnished at twenty-five cents each. This basic valuation is also utilized to compute its expense of doing business.

■■ It is clear that the privilege of eating such surplus or left-over victuals is part of the compensation received by the employees and is therefore wages. We need not bolster this conclusion by analogies found in other of our statutes.

■■ Practical considerations vindicate the propriety of an assumption that what is not eaten by the employees is to be cast away. The leftovers which remain, after having been exposed to the privilege of the employees to forage amid the unsold edibles, are not further salvaged. They are presumably intercepted upon their journey to permanent discard. What is consumed by the employees is not only that which is not sold, but is thus made available because it is not, and will not, be sold. Authority and justifiable assumption undergird a finding that such food, having been purchased and prepared for patrons, is sold at prices which take into account the possibility of an overestimate as to customer needs, and is therefore appropriately termed as unsalable surplus or leftovers. There is no intimation that certain comestibles salvaged by the hotel are, by a reincarnation through culinary cunning, christened anew under subtle and tempting euphemisms, and caused to reappear upon its menus in disarming disguise. Such ingenious and thrifty procedures may find place in popular tradition and suspicion but derive no support from either the

agreed facts or in judicial knowledge. The employees may take it or leave it. They are accorded a privilege which may not be availed of. This right is not ''a closed transaction.'' Having already been integrated into the cost to customers, the sales tax thereon has already presumably been paid.

Section 2 of Chapter 119, Laws of 1934, levied a sales tax equivalent to two percent of the gross proceeds of the business here conducted. Without pausing to consider whether the consumption of such residues by the employees is part of the ''business done'' by the hotel, we quote Paragraph 13 of Chapter 530 of the Act of 1950, which incidentally there appears for the first time in the quoted form: ''Provided, that the term 'gross proceeds of sales' shall include the value of any goods, wares, merchandise or property withdrawn or used from an established business or from the stock in trade for consumption or use in the business or by the owner.'' Paragraph 5 of said Act, which in its quoted form first appeared in Paragraph 5, Chapter 467 of the Act 1948 is as follows: ''The term 'sale' or 'sales' includes the barter or exchange of properties as well as the sale thereof for money, every closed transaction by which the title to taxable property passes shall constitute a taxable event whether the compensation is by money or service, or other thing of value, constituting a sale.''

██ ██ It is clear that the impromptu and informal consumption from the surplus provided for sale to the public is not ''property withdrawn or used from an established business or from the stock in trade''. We, of course, restrict our consideration to the facts of this particular case. We are not dealing with the act of an owner who for his own use withdraws an item of salable merchandise, thereby in effect selling to himself that which otherwise would be available and intended for sale to one of his customers. As soon as the food is rejected or ignored by patrons of the hotel, it ceases to be part of its stock in trade.

Appellee seeks support solely in Stone v. Rogers, 186 Miss. 53, 189 So. 810. Here there was a plain case of barter or one quantity and type of property for another, thereby invoking the provisions of Section 5 of Chapter 530 of the Laws of 1950, quoted above. The transaction was clearly a disposition of merchandise otherwise salable for money but made by exchange or barter of goods and thus is within the legislative definition of a sale. We do not find this case controlling.

Our attention is called to Cook v. Southwest Hotels, 213 Ark. 140, 209 S. W. (2d) 469, 471. The Arkansas statute there construed is essentially similar to our present statute, especially Paragraph 13 of Chapter 530, Laws 1950, above cited. After adverting to the rule of construction which requires taxing statutes to disclose clearly an intent to tax a particular activity, the Court stated: "It cannot be doubted that under Sec. 2(d) of Act 386, one who withdraws merchandise or commodities from his commercial establishent or stockpile, or who reserves it for personal use, is chargeable with the two percent tax. We think, however, that there is a substantial difference between withholding for use—a transaction tantamount to a sale to one's self—and in permitting employees who prepare and serve food to make incidental and irregular application of that which in a sense may be surplus; and unless it is shown as a matter of fact that, because of such use materially larger quantities are prepared than would be under a different custom, it is difficult to see how a specific sale has been made. There is no showing that without this privilege the employees in question would have drawn better wages, although from a practical standpoint it must be supposed that they would."

This view finds support also in State Tax Commission v. Burns, 236 Ala. 307, 182 So. 1, which, for sake of brevity, we do not quote but which is in its reasoning substantially in conformity with the Cook case, supra, and in its facts, in line with the agreed statement of facts

in this record. It is in complete accord with our reasons and conclusions stated above. The following cases cited by appellant are also consistent with our expressed views: Harris v. Lambros, 61 App. D. C. 16, 56 F. (2d) 488; Haag v. Klee, 162 Misc. 250, 293 N. Y. S. 266.

Regardless of an asserted emergency which may have prompted the adoption of our sales tax or an assumed intent in the Legislature to include the practice here involved in its definition of ''gross proceeds of sales'', our statute fails to do so with that degree of clarity which would make it immune to attack for untertainty or ambiguity. This is especially applicable in construing taxing statutes.

We are compelled, therefore, to reverse the judgment of the circuit court which denied to appellant its right to a refund of the tax paid.

Reversed and judgment here for appellant.

**McGehee, C. J.**, and **Hall, Lee** and **Arrington, JJ.**, concur.