William D. GADDY, Commissioner of
Revenues, State of Arkansas *v.* DLM, Inc.

80-148                                                    609 S.W. 2d 6

Supreme Court of Arkansas
Opinion delivered December 8, 1980

*James R. Eads, Jr., Joseph V. Svoboda, Timothy J. Leathers, Martha S. Stephenson, Cassandra Wilkins-Slater,* and *Robert J. DeGostin, Jr.,* by: *H. Thomas Clark, Jr.,* for appellant.

*Friday, Eldredge & Clark,* by: *A. Wyckliff Nisbet, Jr.,* for appellee.

JOHN A. FOGLEMAN, Chief Justice. This case involves the interpretation and construction of the Arkansas Gross Receipts Tax Act of 1941, Act 386 of 1941, as amended,

which is digested as Ark. Stat. Ann. § 84-1901 et seq (Repl. 1980). The Commissioner of Revenues, then William D. Gaddy, assessed appellee, DLM, Inc., $30,072.43 as gross receipts tax for the audit period of May 1, 1974 through July 31, 1977. DLM, Inc., is an Oklahoma corporation authorized to do business in Arkansas with its principal office and place of business at Malvern, Arkansas. It is engaged in the sale of dock levelers. A dock leveler is an iron or steel loading device that bridges the space between the loading docks at motor freight terminals and warehouses and trucks being loaded.

The assessment was made on sales of dock levelers to common carriers who picked up the dock levelers in Arkansas, pursuant to bills of lading. The Commissioner of Revenues takes the position that the sales were Arkansas sales subject to the gross receipts tax. DLM contends they are interstate sales and not subject to the tax. DLM protested the assessment and requested an administrative hearing. After the Arkansas Revenue Department Hearing Board had sustained the assessment in its entirety, DLM, on January 5, 1979, brought suit in the Chancery Court of Pulaski County seeking to have the assessment set aside. On March 14, 1980, that court entered a decree setting the assessment aside. On this appeal, the Commissioner of Revenues asserts the following points for reversal:

I

THE LOWER COURT ERRED IN HOLDING THAT NEITHER TITLE TO, NOR POSSESSION OF, THE GOODS WAS TRANSFERRED TO THE PURCHASER WITHIN THE STATE OF ARKANSAS PURSUANT TO THE MEANING OF THE ARKANSAS GROSS RECEIPTS TAX ACT, CODIFIED AT ARK. STAT. ANN. § 84-1903 (a), SINCE RECEIPT OF THE DOCK LEVELERS WAS TAKEN WITHIN ARKANSAS.

II

SINCE ARK. STAT. ANN. § 84-1902 (c) CLEARLY AND PRECISELY DEFINES A SALE,

## THE LOWER COURT ERRED IN RELYING UPON PARAGRAPH TWO (2) OF ARTICLE 27.

### III

### THE LOWER COURT ERRED IN HOLDING THAT THE CASE OF *PRESSED STEEL CAR CO.* V. *LYONS*, 7 ILL. 2d 95, 129 NE 2d 765, (1955), WAS NOT ON POINT BECAUSE THE SALES IN THAT CASE WHERE "F.O.B. SHIPPING POINT" AS OPPOSED TO THE TERMS BEING "F.O.B. POINT OF DESTINATION" IN THE CASE AT HAND.

There is no dispute about the facts. DLM manufacturers and sells hydraulic dock levelers. It also sells ramps, lifting hooks, rubber bump blocks and other accessories for dock levelers. The sales in question were made to truck lines who were common carriers having their principal places of business in other states. DLM maintains a sales force that travels throughout the United States calling on prospective customers, principally the major truck lines operating as common carriers. As a result of sales calls, orders are received by telephone and mail by DLM at Malvern, where they are accepted and confirmed. The goods ordered are banded, packaged and prepared at Malvern for shipment by various motor carriers. The sales contracts require delivery f.o.b. destination outside Arkansas. Bills of lading were prepared on a form prescribed by the Interstate Commerce Commission. In that form there is a statement that the shipper (DLM) is obligated to deliver the goods to the point they are to be installed and to install them. DLM is responsible for risk of loss in transit and for satisfactory installation of the equipment. The goods are picked up by common carriers, having authority from the Interstate Commerce Commission, at DLM's place of business in Malvern. The sales in question are those in which the goods were picked up by the purchaser in Arkansas, either at Malvern or at some other point to which another carrier had brought them.

The dock levelers were guaranteed by DLM for one

year. DLM employs independent contractors to install them. As soon as DLM makes certain that levelers shipped have arrived at their destination, the independent contractor is advised to proceed with the installation. DLM is paid after installation is complete.

The Arkansas gross receipts tax of 3 percent is levied upon the gross proceeds or gross receipts derived from sales of tangible personal property. Ark. Stat. Ann. § 84-1903 (a) (Repl. 1980). Sale, as defined by the statute, means the transfer of title or possession of tangible personal property for a valuable consideration, "regardless of the manner, method, instrumentality or device by which the transfer is accomplished." Ark. Stat. Ann. § 84-1902 (c) (Repl. 1980). As appellant points out, the determining issue is whether either title or possession was transferred from DLM, Inc., to the purchasing carrier when the carrier received the property within the State of Arkansas. We agree with the chancery court that neither title nor possession was transferred to the purchasers when they, as common carriers, picked up the goods they had ordered.

Appellant relies principally upon *St. Louis, Iron Mt. & S. Ry. Co.* v. *Citizens Bank of Little Rock*, 87 Ark. 26, 112 S.E. 154, in which it was held that a bill of lading is both a receipt and a contract and that, as a receipt, it is prima facie but not conclusive evidence of the facts recited. Since a bill of lading is a receipt, appellant argues, this means that possession is transferred and, if possession is transferred, a sale has occurred within the meaning of Ark. Stat. Ann. § 84-1902 (c). Appellant reads too much into the opinion on which he relies. The action in that case for recovery of the value of cotton delivered by the railway company without surrender of the bill of lading issued for it. Of course, the issuance of a bill of lading is a receipt by the carrier. There is no question about receipt of the goods. The question here is whether the receipt was given as a carrier or as the purchaser of the goods and the decision relied upon by appellant has no application here. We have heretofore held that the statutory definition of sale does not include every transaction in which there is a transfer of possession for a consideration. See *Harvey* v. *Southern Wooden Box, Inc.*, 253 Ark. 290, 486 S.W. 2d 65. The purpose of the transfer of possession is important. The delivery here was for

the purpose of transportation of the goods to the place where they would be installed. The bills of lading were on standard forms.

Appellant also relies upon *Pressed Steel Car Co.* v. *Lyons*, 7 Ill. 2d 95, 129 N.E. 2d 765 (1955), in which the Illinois Supreme Court held that a tax, imposed upon the sale of goods, applied to goods sold to a railroad and shipped via the purchaser under standard bills of lading f.o.b. point of origin. The precise issue there was not the exact issue here. It was whether Illinois could levy a tax on a sale to a common carrier who receives delivery under a contract for the shipment of goods shipped to purchasing common carriers under standard uniform bills of lading in light of the commerce clause of the United States Constitution. The Illinois court said that the question was whether the state was *compelled* by the commerce clause of the federal constitution to treat railroads who carry outside the state the goods they purchase within it differently from others who do the same thing. We are not faced with that question.

Assessment of the facts in the case which are pertinent to the inquiry here presents some difficulty. The orders by the railroads were placed by the Chicago office of four of the five railroads. Some of the orders specified that the freight be prepaid. On others the goods were shipped collect and the seller deducted freight from the invoice price. The Illinois Supreme Court said that the parties did not consider that the variables in the payment of freight affected the intrastate character of the transaction. The case was decided on the basis of a holding that the commerce clause does not *require* a state to recognize any dual personality of a carrier for taxing purposes.

A significant difference between the case before us and *Pressed Steel* is the obligation of appellee to install the equipment after its arrival at its ultimate destination. In *Pressed Steel*, there was no similar obligation; the orders only specified that title, or title and possession, should not pass to the consignee until the goods reached their destination, or that the goods were subject to inspection at destination.

Regardless of the distinctions to be made between the

Illinois case and this one, we find the logic of the California Supreme Court in *Standard Oil Company of California* v. *Johnson*, 24 Cal. 2d 40, 147 P. 2d 577 (1944) more convincing. The statutory definition of "sale" in that case was not materially different from the definition we are considering. In that case the seller delivered oil to a railroad, a commercial carrier, which was the purchaser, under standard bills of lading with the railroad named as consignee with freight charges prepaid. The California court took the position that whether delivery to a carrier constitutes delivery to a buyer depends upon the intention of the parties as ascertained from the contract and circumstances of the case. As that court pointed out, ordinarily, unless a contrary intent appears, where a seller contracts to deliver goods at a given destination and does deliver them to a carrier consigned to the buyer f.o.b. point of destination, delivery to the carrier is not delivery to the buyer, and the carrier is the agent of the seller, not the buyer, in transporting the property.[1] That court felt that the mere fact that the seller did not select a different carrier should not make the sale taxable in California. It was held that the intention of the parties was that the railroad receive the oil as a common carrier and the delivery to the railroad as a buyer did not occur until the oil reached its destination outside the state.

Under the holding of the California court and the view we take, there is no reason why the form of the transaction should be disregarded, if the transaction is bona fide, even though avoidance of the tax is a part of it. There is not the slightest suggestion that the transactions involved here were a subterfuge with intention to defraud the State of Arkansas of taxes which would otherwise be due it. There is no reason why a seller should be required to discriminate against its own customer in shipping goods purchased by that customer.

In the California case it appears that the goods, fuel oil, were usable at any time after they were surrendered to the carrier by the seller. The fact that the seller here had the contractual obligation to install the goods after they reached

---

[1] As we see it, the only significance of § 2 of Article 27 of appellant's regulations is its recognition of this general rule.

their destinations is not without significance, even though it may not be controlling.

Appellant's argument that the executive construction of the statute by the Administrative Tax Hearing Board should not be disturbed except for cogent reasons or unless clearly erroneous, citing *Cook, Comm'r.* v. *Wilson*, 208 Ark. 459, 187 S.W. 2d 7, is not convincing here. Putting aside for a moment the fact that we find the board's determination clearly erroneous, the argument overlooks two significant facts. The first one was also overlooked by appellant in its abstract of the record, i.e., testimony that DLM had been previously audited and found not liable for additional taxes, even though there was not any difference in the conduct of appellee's business during that audit period and appellee had only paid the gross receipts tax on sale of goods destined to remain in Arkansas. The other is that, in construing a statute, any doubt about its imposition of a tax on a taxpayer must be resolved in favor of the taxpayer and against the taxing power. *Heath* v. *El Dorado Golf & Country Club*, 258 Ark. 664, 528 S.W. 2d 394; *Cook, Comm'r.* v. *Southwest Hotels, Inc.*, 213 Ark. 140, 290 S.W. 2d 469; *Wiseman* v. *Arkansas Utilities Co.*, 191 Ark. 854, 88 S.W. 2d 81. The express purpose to impose a tax upon a transaction must be so clear that no reasonable mind should conclude that the intent was otherwise. *Cook, Comm'r..* v. *Southwest Hotels, Inc.*, supra.

The decree of the chancery court is affirmed.