CARGO CARRIERS, INC. *v.* Charles D. RAGLAND,
Director for Revenues, State Department of
Finance and Administration

82-205                                        646 S.W.2d 681

Supreme Court of Arkansas
Opinion delivered February 14, 1983
[Supplemental Opinion on Denial of Rehearing March 28, 1983.]

*Coleman, Gantt, Ramsay & Cox,* by: *James W. Hyden,* for appellant.

*Timothy J. Leathers, Wayne Zakrzewski, Kelly S. Jennings, John H. Theis, Ann Fuchs* and *Joseph V. Svoboda,* for appellee.

STEELE HAYS, Justice. Cargo Carriers, Inc., manufactures barges at Pine Bluff. Some are sold to third parties, some are retained and delivered to Inland Waterways Division, a separate division of Cargo Carriers, Inc. In 1978 the Arkansas Department of Revenues assessed a deficiency of $204,948.22 in Gross Receipts Tax (Sales Tax) claimed by the State on the delivery of sixty-six barges to Inland Waterways. The State took the position that when the sixty-six barges were "withdrawn from inventory" a taxable event occurred within the meaning of Ark. Stat. Ann. § 84-1902 (d) (Repl. 1980) which reads in part:

> "The term 'gross proceeds' or 'gross receipts' shall include the value of any goods, wares, merchandise, or property withdrawn or used from the established business or from the stock and trade of the established reserves for consumption or use in such business or by any other person."

Cargo protested and when administrative remedies provided no relief, it filed suit in chancery to enjoin collection of the tax, claiming the assessment of taxes amounted to an illegal exaction and, hence, was prohibited by Article 16 § 13 of the Constitution of Arkansas. Cargo contended that § 84-1902 (d) was not applicable because the barges were only partially completed in Arkansas. It said the unfinished hulls were then ferried to Paducah, Kentucky, for final completion and so the barges did not become a part of Cargo's fleet until they had entered interstate commerce outside the State of Arkansas. Cargo's petition asked for a refund of $61,180.89 in Use Taxes it had paid on the value of materials used in constructing the barges.

After testimony and proof the Chancellor found that the barges were completed at Pine Bluff and became subject to the Sales Tax under § 84-1902 (d) at that time. A deficiency of $204,948.22, based on the value of the completed barges at the time of delivery, was assessed and Cargo's claim of refund was denied, as the proof showed that Cargo had been credited with the amount of Use Tax paid.

On appeal, no issue is raised that the Chancellor's findings are against the preponderance of the evidence.

Instead, we are asked to hold the Arkansas Gross Receipts Tax, as applied in this case, unconstitutional under the commerce, due process and equal protection clauses of the Constitution of the United States.

The State counters Cargo's assignment of error with the familiar rule that constitutional questions cannot be raised for the first time on appeal. *T. H. Epperson & Son, Inc.* v. *Robinson*, 274 Ark. 142, 622 S.W.2d 668 (1982), *Gross* v. *Gross*, 266 Ark. 186, 585 S.W.2d 14 (1979). The point is well taken, as we find no basis in the record to support the argument on appeal.

Cargo cites only an amendment to its petition asserting that the assessment against it constitutes "an illegal exaction prohibited by the Constitution of the State of Arkansas", as evidence that the issue was first presented to the trial court. But that attempt must fail. Art. 16 § 13 of the Arkansas Constitution provides that any citizen may institute suit in behalf of himself and others to protect against the enforcement of any illegal exactions. There is nothing about that provision of the Arkansas Constitution that bears any resemblance to those provisions of the United States Constitution which Cargo claims are violated, i.e. the commerce, due process or equal protection clauses. We readily reject the premise that a litigant can argue a violation of the illegal exaction provision of the Arkansas Constitution before the trial court and contend on appeal his argument includes the commerce, due process and equal protection clauses of the United States Constitution as well. Such a holding would be hostile to the principle that arguments must be presented to the trial court with clarity and particularity in order to be noticed on appeal. *Abernathy* v. *State*, 278 Ark. 250, 644 S.W.2d 590 (1983), *Klobnock* v. *Abbott*, 303 N.W.2d 149 (Iowa S. Ct., 1981), *Foster* v. *Lamphere*, 368 A.2d 1238 (R.I. S.Ct. 1977), *City of St. Louis* v. *Butler Co.*, 219 S.W.2d 372 (Mo. S.Ct. 1949); *Sewer and Waterworks Improvement District No. 1* v. *McClendon*, 187 Ark. 510, 60 S.W.2d 920 (1933).

The decree is affirmed.

Supplemental Opinion on Denial of
Rehearing delivered March 28, 1983

STEELE HAYS, Justice. In our opinion in *Cargo Carriers, Inc.* v. *Charles D. Ragland, Director,* 278 Ark. 401, 646 S.W.2d 681 (1983), we declined to consider arguments by appellant that the commerce, due process and equal protection clauses of the United States Constitution were violated by the imposition of a sales tax by the State of Arkansas on barges manufactured by appellant, as we found the record confirmed appellee's claim that the arguments were newly raised on appeal.

By Petition for Rehearing, appellant has satisfied us that these arguments, though not pleaded, were sufficiently raised in the trial court to be preserved on appeal. Appended to the Petition for Rehearing is a copy of appellant's

Memorandum Brief submitted to the Chancellor after trial, but before the decision, which cites the commerce and equal protection clauses. Whether the Chancellor considered the arguments to be belated, or merely unpersuasive, we have no way of knowing, as the decree makes no mention of them. However that may be, we agree appellant is entitled to have these assignments of error decided on their merits and we have accordingly reviewed the arguments in appellant's brief.

Appellant concedes we have often held that a manufacturer who withdraws stock from its own inventory for its own use becomes liable for sales tax on such goods. *Georgia Pacific Corp.* v. *Larey*, 242 Ark. 428, 413 S.W.2d 868 (1967), *Republic Steel Corp.* v. *McCastlain*, 240 Ark. 979, 403 S.W.2d 90 (1966), *Cook* v. *Southwest Hotels, Inc.*, 213 Ark. 140, 209 S.W.2d 469 (1948). However, appellant argues the sixty-six barges manufactured at its facility in Pine Bluff were unfinished hulls when they left Arkansas, and were not completed until after their arrival at Paducah, Kentucky, where pre-fabricated fiberglass hatch covers were installed. The proof was that appellant's barges are fit for some cargoes, but not others, when they leave Pine Bluff. Appellant submits that if the barges are not completed until they reach Paducah then they have entered the stream of interstate commerce and are not subject to sales tax in Arkansas under the commerce clause, which limits taxation by the states on goods in interstate commerce. *Gibbons* v. *Ogden*, 9 Wheat 1, 6 L. Ed. 23 (1824), *J. D. Adams Manufacturing Co.* v. *Storen*, 304 U.S. 307 (1938), *Northwestern Cement Co.* v. *Minnesota*, 358 U.S. 450 (1959), *American Bridge Co.* v. *Smith*, 179 S.W.2d 12 (Mo. 1944). But whether the barges were completed or not was a disputed factual issue which the Chancellor specifically decided adversely to the appellant. Appellant has not asked us to consider whether that finding is clearly against the preponderance of the evidence and we will not look beyond the express findings in the decree that these barges were completed in Arkansas. Indeed, that is the crucial issue of this litigation and, once that is settled, the constitutional arguments tend to resolve themselves.

Appellant leans heavily on *Complete Auto Transit Inc.* v. *Brady*, 430 U.S. 274 (1977). There, the Supreme Court reexamined the taxing power of the states under the commerce clause and upheld a tax on a Michigan taxpayer by the State of Mississippi. The Court tersely overruled *Spector Motor Service* v. *O'Connor*, 340 U.S. 602 (1951) which, on similar facts, had held that Connecticut could not impose a tax on a Missouri taxpayer engaged in interstate trucking (some of which either originated or terminated in Connecticut) reasoning that state taxation of interstate commerce was a *per se* violation of the commerce clause. Described as a derelict and an aberration,[1] *Spector* could not survive its own shaky beginnings (i.e. dissenting opinions by Justices Clark, Black and Douglas) and ensuing criticisms. "State Taxation of Interstate Business and the Supreme Court", Hellerstein, 62 Va. L. Rev. 149 (1976), "Comment, Pipelines, Privileges and Labels": Colonial Pipeline Co. v. Triagle, 70 Nw. L. Rev. 835 (1975).

In *Auto Transit* the Court extracted what might be seen as the essence of a number of relevant decisions, before and after *Spector*, as sustaining a tax against commerce clause challenge when: The tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the taxing state.

Appellant concedes, as it must, that it has a nexus to Arkansas, in that it owns and operates a substantial manufacturing plant in Arkansas. But its argument then by-passes that reality and suggests that the taxed activity which must meet the test of *Auto Transit* is the *operation* of the barges, that is, the carriage of goods for hire, which is admittedly done out-of-state by Inland Waterways Division. We find no language in the *Auto Transit* opinion which modifies the substantial nexus requirement as appellant would have us do, nor anything there or elsewhere to suggest it is the *use* to which its product is put that determines whether a manufacturer has a substantial nexus within a given state. We

---

[1] Justices Blackmun and Rehnquist, dissenting, *Colonial Pipeline Company* v. *Triagle*, 421 U.S. 100.

reject that supposition. At issue here is a sales tax, a levy on three percent of the gross receipts of goods manufactured in Arkansas, not a privilege or franchise tax on activities thought to be subject to the taxing jurisdiction of this State. The activity of appellant here scrutinized is not the operation of its barges, but their manufacture, and the taxability of that enterprise is clear. *International Harvester Co.* v. *Department of Treasury*, 322 U.S. 340 (1944), *Freeman* v. *Hewit*, 329 U.S. 249 (1946).

Appellant urges that still another element of the *Auto Transit* case is impinged here, i.e. the tax is discriminatory on its face because Cargo Carriers is being assessed a three percent gross receipt tax while those who purchase barges from it, and who compete with it, have not had to pay the same tax. This is essentially the equal protection argument as well. Appellee's response is that had appellant's out-of-state purchasers taken title or possession of the barges in Arkansas, they too would have been subject to the sales tax. Nor is it shown whether such purchasers were subject to a use tax in other states. Thus, whether appellant has a competitive disadvantage is an open question. We think what has been said before is sufficient, we disagree that the imposition of a sales tax on goods manufactured in Arkansas under the circumstances of this case discriminates against interstate commerce.

The existence of a rational relationship between the taxing state and the taxable event is not subject to question. (*Auto Transit, supra, Moorman Manufacturing Company* v. *Bair*, 437 U.S. 267 [1978]). But a clearer connection between Arkansas and the event sought to be taxed in this case could hardly be imagined. These barges were manufactured entirely in Arkansas from raw materials. Steel plate was fabricated into various components, and combined into sub-assemblies from which the barge hulls were constructed. The barges assembled at appellant's Pine Bluff plant are, according to the findings of the trial court, completed products and, therefore, the entire manufacturing process occurs within the taxing state. The link between a taxpayer and the benefits afforded by a civilized society, i.e. a trained work force, police force, fire protection, schools, commerce,

etc. was noted in *Commonwealth Edison Company* v. *Montana,* 453 U.S. 609 (1981), all of which inure to appellant at its Pine Bluff plant.

Rehearing denied.