TIFFANY'S RESTAURANTS, INC. d/b/a
TGI FRIDAYS RESTAURANT *v.* The CITY OF
LITTLE ROCK, Arkansas & Charles D. RAGLAND,
Commissioner of Revenues, Department of Finance
& Administration, State of Arkansas

83-106                          658 S.W.2d 394

Supreme Court of Arkansas
Opinion delivered October 17, 1983

*Wright, Lindsey & Jennings,* for appellant.

*Timothy J. Leathers, Joseph V. Svoboda, Wayne Zakrzewski, Kelly S. Jennings, Ann Fuchs, Joe Morphew,* and *Mike Munns,* by: *John Theis,* for appellee Department of Finance and Administration.

*R. Jack Magruder,* City Atty., by: *Carolyn B. Witherspoon,* Asst. City Atty., for appellee City of Little Rock.

JOHN I. PURTLE, Justice. This is a class action suit brought by appellant and those similarly situated challenging the past practice of the City of Little Rock and the state imposing a ten percent supplemental tax on gross receipts from the sale of wines by a retailer holding both wine and mixed drink permits. Trial in the lower court was on stipulations, documentary evidence and arguments. No testimony was taken. The chancellor found that the state and city could each impose the ten percent supplemental tax

on wine sold by retailers holding both wine and mixed drink permits. The case comes before us under Supreme Court Rule 29 (1) (c) involving the validity, interpretation, construction and constitutionality of an act of the Arkansas General Assembly. We reverse the lower court's decision and remand.

On appeal the appellant argues three points: 1) that foreign wine is not included within the term "alcoholic beverages"; 2) that a wine permit holder is allowed to sell all wines without paying the supplemental tax, and; 3) that classifying foreign and domestic wine differently for taxing purposes is unconstitutional.

The appellant held a wine permit pursuant to Act 120 of 1965 (Ark. Stat. Ann. §§ 48-626, et seq. [Repl. 1977]), as well as a mixed drink permit pursuant to Act 132 of 1969 (Ark. Stat. Ann. §§ 48-1401, et seq. [Supp. 1983]). The "Mixed Drink Act" (Act 132 of 1969) authorized sale of mixed drinks; authorized a supplemental gross receipts tax of ten percent to be levied by the state, and gave cities, towns and counties the right to levy an additional supplemental tax or fee. The application of the "Mixed Drink Act" to sales of wine was not commenced by taxing authorities until 1979.

The issues presented are of statutory construction and constitutionality of an act of the Arkansas General Assembly. Ark. Stat. Ann. § 48-1402 (c) (Act 132 of 1969) provides: "'alcoholic beverages' means all intoxicating liquors of any sort, other than beer and native wine . . ."

Ark. Stat. Ann. § 48-626 (b) defines wine by saying:

"Wine" or "wines" shall mean any port wine, sherry wine, vermouth wine or other wines, the alcoholic content of which does not exceed fourteen percent (14%), regardless of whether such wines are manufactured within or without the State of Arkansas.

Ark. Stat. Ann. § 48-1417 states:

Any permit to sell alcoholic beverages for on-premises consumption shall include authority to sell . . . native

and imported wine by the drink. Provided, however, that nothing in this act shall repeal Act 120 of 1965 regarding the licensing of restaurants to sell native wines as authorized in said Act, it being the intent hereof that a permit issued under this Act for sale of alcoholic beverages for on-premises consumption shall include authority to sell native or imported wines by the drink on the licensed premises, but any restaurant . . . may obtain a license under Act 120 of 1965 to sell native wines as authorized therein.

Ark. Stat. Ann. §§ 48-1408 and 1409 provide that the gross receipts tax applies to the sale of alcoholic beverages, and additionally, cities, towns and counties are allowed to collect a supplemental tax of ten percent on the sale of alcoholic beverages for on-premises consumption pursuant to a mixed drink permit.

Prior to 1979 the city and state interpreted the "Mixed Drink Act" to exclude wine if sold pursuant to a wine permit. In 1979 the city changed its stand to agree with the present holding of the trial court. The state followed suit in collecting the supplemental tax in 1982. Both here argue that foreign wine is subject to the additional tax because it is included in the term "alcoholic beverages".[1]

We do not agree with appellant's argument that foreign wines are not included within the meaning of "alcoholic beverages" as stated in Ark. Stat. Ann. § 48-1402 (c). The language is set out previously; it is obvious that the term embraces all intoxicating liquors of any sort except beer and native wine. We adhere to our statement in *Vault* v. *Adkisson*, 254 Ark. 75, 491 S.W.2d 609 (1973), where we stated:

The meaning of a statute must be determined from the natural and obvious import of the language used by the legislature without resorting to subtle and forced construction for the purpose of limiting or extending

---

[1]Act 844 of 1983 has removed all wines from the supplemental provisions of the "Mixed Drink Act."

the meaning. (*Black* v. *Cockrell,* 239 Ark. 367, 389 S.W.2d 881 [1965])

We see no need to pursue this argument further because the meaning is clear from the words used in the statutes.

Secondly, it is argued that the trial court incorrectly held that sales of foreign wines were subject to the supplemental taxes even if the seller held a wine permit. We agree with appellant's argument. It is undisputed that the holder of a wine only permit is allowed to sell both foreign and domestic wines. When a wine permit holder also obtains a mixed drink permit the city and state contend the foreign wine is sold pursuant to the mixed drink permit rather than the wine permit. We have many times held that when construing a statute imposing a tax, any doubt regarding its imposition should be resolved in favor of the taxpayer and against the taxing authority. *Gaddy* v. *D.L.M., Inc.,* 271 Ark. 311, 609 S.W.2d 6 (1980). The expressed intent to impose a tax must be so clear that no reasonable mind could conclude otherwise. *Cook* v. *Southwest Hotels, Inc.,* 213 Ark. 140, 209 S.W.2d 469 (1948). In the case before us the statutes had been interpreted as the appellant argues for many years before it was decided that another interpretation was in order. The attorney general interpreted the statutes both ways. Reasonable minds could not necessarily conclude that the supplemental taxes were in order.

It is clear that a licensee holding a wine permit may sell both domestic and foreign wine. It is also clear that the holder of a mixed drink permit may sell alcoholic beverages, including non-domestic wine. Thus, foreign wine may be sold pursuant to either permit. Therefore, if a licensee holds both permits he may sell all wine pursuant to his wine permit. He is then being treated the same as wine only licensees with respect to sales of wine and the taxes thereon.

In view of our holding in this case, it is not necessary to address the argument that the method of taxation being utilized by the city and state is unconstitutional.

Reversed and remanded.

GEORGE ROSE SMITH and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. I believe the Chancellor was correct in holding that foreign wines are included in the definition of alcoholic beverages and, hence, subject to the 10% supplemental gross receipts tax in the Mixed Drink Act of 1969.

In 1965 the legislature passed Act 120, permitting the sale of native wines under certain conditions. Native wines were carefully defined as having no more than 14% alcohol and made in Arkansas from grapes or other fruits and vegetables grown in Arkansas.

Next, the Mixed Drink Act of 1969 [Act 132] was enacted which subjected all alcoholic beverages except beer and *native* wine to the supplemental sales tax imposed under Section 8 of the act.

Then, in 1971, Act 441 was passed which included amendments to Act 120 of 1965, one of which defined wine as not more than 14% alcohol "regardless of whether such wines are manufactured within or without the State of Arkansas." The stated purpose of Act 441 was to promote Arkansas wineries and tourism by permitting the transportation of limited quantities of wines through dry counties of the state by tourists without their being in violation of laws and regulations restricting such transportation. Nothing in the act suggests it was intended to affect the Mixed Drink Act by altering the definition of alcoholic beverages.

A very similar statutory process was examined in *Bolar v. Cavaness*, 271 Ark. 69, 607 S.W.2d 367 (1980), where we held that where a provision of an existing statute is specifically adopted by a later statute, as distinguished from adopting the law generally in force on that subject, the operation of the later statute will not be affected by the still later repeal of the *original* statute. Thus, if statute A is specifically adopted in part by statute B, without an adoption of the general law on the subject, the subsequent repeal of statute A does not change statute B.

To analogize, statute A [Act 120 of 1965] permitted the limited sale of native wine; statute B [Act 132 of 1969] granted local option for the sale of all alcoholic beverages except beer and native wines, subject to a supplemental 10% sales tax; statute C [Act 441 of 1971] permitted the transportation of wines in Arkansas which would otherwise be illegal and amended statute A to make all wines subject to statute C. Under the reasoning of *Bolar* v. *Cavaness*, the enactment of statute C does not operate to take foreign wines outside the effect of statute B.

GEORGE ROSE SMITH, J., joins in this dissent.